## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| **CURTIS E. BLACKWELL, II**, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:20-cv-11493 |
| | : | |
| v. | : | |
| | : | Judge Sean F. Cox |
| **JONES DAY; MARK DANTONIO;** | : | |
| **LOUIS P. GABEL; THOMAS** | : | |
| **KIENBAUM, BILL BEEKMAN**, | : | |
| | : | |
| Defendants. | : | |

## JOINT MOTION TO DISMISS
## <u>BY JONES DAY AND LOUIS P. GABEL</u>

## JOINT MOTION TO DISMISS BY
## JONES DAY AND LOUIS P. GABEL

For the reasons set forth below and in the accompanying brief, Defendants Jones Day and Louis P. Gabel hereby respectfully move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against them.   Defendants contacted counsel for Plaintiff Curtis Blackwell, and Blackwell respectfully does not concur.

Plaintiff Curtis Blackwell's Complaint fails to state a claim upon which relief can be granted.   Both of his claims against Jones Day and Gabel require him to show a First Amendment violation, but he cannot do so.   He tries to create a constitutional right not to report sexual assault, but the Constitution recognizes no such right, especially of public employees like Blackwell.   And even if it did, Jones Day and Gabel did not cause its violation.   Nor may Blackwell sue Jones Day or Gabel under § 1983 anyway, for they are private actors, not the State.   And if they *were* the State, they would be entitled to qualified immunity.

On any number of these grounds, the Court should dismiss the Complaint with prejudice.

Dated:  August 13, 2020                    Respectfully submitted,


                                           /s/ Jeffrey J. Jones


Louis A. Chaiten                           Jeffrey J. Jones
James R. Saywell                           David S. Rutkowski
  (applications forthcoming)               JONES DAY
JONES DAY                                  150 West Jefferson, Suite 2100
901 Lakeside Avenue East                   Detroit, Michigan 48226-4438
Cleveland, Ohio 44114-1190                 (P) 313.733.3939
T: (216) 586-3939                          (F) 313.230.7997
F: (216) 579-0212                          jjjones@jonesday.com
lachaiten@jonesday.com                     dsrutkowski@jonesday.com
jsaywell@jonesday.com


                                           *Counsel for Defendants Jones Day*
                                           *and Louis P. Gabel*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| **CURTIS E. BLACKWELL, II**, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:20-cv-11493 |
| | : | |
| v. | : | |
| | : | Judge Sean F. Cox |
| **JONES DAY; MARK DANTONIO;** | : | |
| **LOUIS P. GABEL; THOMAS** | : | |
| **KIENBAUM, BILL BEEKMAN**, | : | |
| | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF JONES DAY'S AND LOUIS GABEL'S
<u>JOINT MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF ISSUES PRESENTED...................................... vii

CONTROLLING AUTHORITY ................................................... viii

INTRODUCTION ............................................................................1

BACKGROUND ..............................................................................4

    A.    The Sexual Assault Underlying Jones Day's Investigation ...............4

    B.    MSU Hires Jones Day as External Counsel To Investigate How the School Responded to the Sexual-Assault Allegations..................5

    C.    Jones Day Finds that All Staff Members But Blackwell Complied with MSU's "Relationship Violence & Sexual Misconduct" Policy...........................................................................6

    D.    MSU Releases a Public Version of Jones Day's Findings— Which Does Not Identify Blackwell ................................................6

    E.    Blackwell Sues Everyone Involved—in Three Separate Lawsuits .........................................................................................7

ARGUMENT...................................................................................10

I.    BLACKWELL FAILS TO ALLEGE A CONSTITUTIONAL VIOLATION BY ANYONE, FAR LESS JONES DAY OR GABEL..................................10

    A.    The First Amendment Does Not Guarantee the "Right" of a Public Employee To Keep Sexual-Assault Allegations Secret .........10

    B.    Jones Day and Gabel Did Not Cause Any Constitutional Violation........................................................................................16

II.    BLACKWELL HAS NO § 1983 CLAIM AGAINST JONES DAY AND GABEL IN ANY EVENT......................................................................17

    A.    Jones Day and Gabel Are Not State Actors .....................................18

    B.    If Jones Day and Gabel Were State Actors, They Receive Qualified Immunity.........................................................................21

CONCLUSION ..............................................................................24

CERTIFICATE OF SERVICE.......................................................25

# TABLE OF AUTHORITIES

**Page**

CASES

*Alexander v. City of Round Rock*,
854 F.3d 298 (5th Cir. 2017)..............................................................23

*Amini v. Oberlin Coll.*,
259 F.3d 493 (6th Cir. 2001)..............................................................1

*Arabbo v. City of Burton*,
689 F. App'x 418 (6th Cir. 2017)....................................................22

*Boulton v. Swanson*,
795 F.3d 526 (6th Cir. 2015)....................................................13, 14

*Coleman v. Miller*,
117 F.3d 527 (11th Cir. 1997)........................................................12

*Cullinan v. Abramson*,
128 F.3d 301 (6th Cir. 1997)..........................................................22

*Dorcely v. Wyandanch Union Free Sch. Dist.*,
665 F. Supp. 2d 178 (E.D.N.Y. 2009)...........................................19

*Dubuc v. Green Oak Twp.*,
482 F. App'x 128 (6th Cir. 2012)............................................viii, 19

*Ellison v. Garbarino*,
48 F.3d 192 (6th Cir. 1995)........................................................19, 21

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
920 F.3d 421 (6th Cir. 2019)..........................................................12

*Enjoi Transp., LLC v. City of Detroit*,
2019 WL 764237 (E.D. Mich. Feb. 21, 2019)..............................19

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*,
  624 F.3d 332 (6th Cir. 2010) ................................................................ 11, 12, 15

*Filarsky v. Delia*,
  566 U.S. 377 (2012) ....................................................................... viii, 21, 22

*Flagg Bros. v. Brooks*,
  436 U.S. 149 (1978) ................................................................................ 19

*Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*,
  605 F.3d 345 (6th Cir. 2010) ................................................................. 14

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ........................................................................... passim

*Gazette v. City of Pontiac*,
  41 F.3d 1061 (6th Cir. 1994) ................................................................. 16

*Ghandi v. Police Dep't of City of Detroit*,
  823 F.2d 959 (6th Cir. 1987) ................................................................. 21

*Grier v. Wayne Cnty. Cir. Ct.*,
  2007 WL 1106143 (E.D. Mich. Apr. 12, 2007) ...................................... 18

*Gwinnett v. Sw. Fla. Reg'l Planning Council*,
  407 F. Supp. 3d 1273 (M.D. Fla. 2019) ................................................. 15

*Haynes v. City of Circleville*,
  474 F.3d 357 (6th Cir. 2007) ................................................................. 14

*Henderson v. City of Flint*,
  751 F. App'x 618 (6th Cir. 2018) ........................................................... 14

*Housey v. Macomb County*,
  534 F. App'x 316 (6th Cir. 2013) ........................................................... 14

*In re City of Detroit*,
  2015 WL 603888 (Bankr. E.D. Mich. Feb. 12, 2015) ............................ 20

*J.W. v. Johnston Cty. Bd. of Educ.*,
   2014 WL 4771613 (E.D.N.C. Sept. 24, 2014)..................................................14

*Johnson-Kurek v. Abu-Absi*,
   423 F.3d 590 (6th Cir. 2005).....................................................................viii, 12

*Kidwell v. City of Union*,
   462 F.3d 620 (6th Cir. 2006).............................................................................11

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
   432 F. Supp. 3d 823 (S.D. Ind. 2020)...............................................................15

*LaSalle v. P.R. Elec. Power Auth.*,
   144 F. Supp. 3d 274 (D.P.R. 2015) ...................................................................15

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S. Ct. 1921 (2019) ......................................................................................18

*Marie v. Am. Red Cross*,
   771 F.3d 344 (6th Cir. 2014).............................................................................21

*Mayhew v. Town of Smyrna*,
   856 F.3d 456 (6th Cir. 2017)......................................................................11, 14

*Meriwether v. Trustees of Shawnee State Univ.*,
   2019 WL 4222598, at *17 (S.D. Ohio Sept. 5, 2019).......................................12

*Miller v. Davis*,
   123 F. Supp. 3d 924 (E.D. Ky. 2015)................................................................15

*NASA v. Nelson*,
   562 U.S. 134 (2011)...........................................................................................15

*Newsome v. Merz*,
   17 F. App'x 343 (6th Cir. 2001)..................................................................viii, 18

*Padilla v. S. Harrison R-II Sch. Dist.*,
   181 F.3d 992 (8th Cir. 1999)..............................................................................15

*Plummer v. Detroit Police Dep't*,
    2017 WL 1091260 (E.D. Mich. Mar. 23, 2017) .........................................19, 21

*Polk County v. Dodson*,
    454 U.S. 312 (1981)....................................................................................18

*Raines v. Indianapolis Pub. Sch.*,
    52 F. App'x 828 (7th Cir. 2002).................................................................19

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982)....................................................................................18

*Thaddeus-X v. Blatter*,
    175 F.3d 378 (6th Cir. 1999) (en banc) ......................................................10

*Thomas v. Nationwide Children's Hosp.*,
    882 F.3d 608 (6th Cir. 2018)..............................................................passim

*Tunnell v. Crosby*,
    657 F. Supp. 2d 1263 (N.D. Fla. 2009) .......................................................23

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994)....................................................................................11

*United States v. Sindel*,
    53 F.3d 874 (8th Cir. 1995).........................................................................12

*White v. Pauly*,
    137 S. Ct. 548 (2017)..................................................................................22

*Williams v. Kentucky*,
    24 F.3d 1526 (6th Cir. 1994).......................................................................23

*Wurzelbacher v. Jones-Kelley*,
    675 F.3d 580 (6th Cir. 2012)..............................................................viii, 17

**STATUTES**

42 U.S.C. § 1983.................................................................................................9

**OTHER AUTHORITIES**

34 C.F.R. § 106.8.............................................................................................13

## CONCISE STATEMENT OF ISSUES PRESENTED

1A.    Does the First Amendment prohibit a public university from requiring its employees to report suspected sexual abuse?

1B.    If so, did the private law firm and lawyer sued here, as opposed to the public school with the policy requiring reporting of sexual-assault allegations, violate that right?

2A.    Does a private law firm become the "State" simply by performing an external and independent investigation for the law firm's client, a public school?

2B.    If so, is the right of a public employee to keep sexual-assault allegations from one's supervisors "clearly established" so that it overcomes the state actors' qualified immunity?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Issue 1(A)** (whether a First Amendment right is implicated):

- *Johnson-Kurek v. Abu-Absi*, 423 F.3d 590 (6th Cir. 2005) (There can be no "compelled speech"—the First Amendment is not even "implicated"—when the plaintiff is "not required to communicate the ideas . . . of others as if they were h[is] own").

- *Garcetti v. Ceballos*, 547 U.S. 410 (2006) (Even if there were compelled speech, a public employee can be required to speak as part of his job duties, as to report sexual abuse).

**Issue 1(B)** (whether Jones Day and Gabel, as opposed to Michigan State University ("MSU"), caused any violation)

- *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580 (6th Cir. 2012) (Jones Day and Gabel could not have taken any "adverse action" or caused any constitutional violation when they did not "publicly disclose" any information about Black-well, among other reasons).

**Issue 2(A)** (whether Jones Day and Gabel are state actors):

- *Newsome v. Merz*, 17 F. App'x 343 (6th Cir. 2001) (A "lawyer representing a client" does *not* automatically become "a state actor within the meaning of § 1983," even when the client is a public entity).

- *Dubuc v. Green Oak Twp.*, 482 F. App'x 128 (6th Cir. 2012) (An outside counsel offering independent legal advice to a public entity "is not an action that can be attributed to the state" for purposes of the state-action doctrine).

**Issue 2(B)** (if Jones Day and Gabel are state actors, whether they are entitled to qualified immunity)

- *Filarsky v. Delia*, 566 U.S. 377 (2012) (Lawyers retained by the government to "conduct[] an official investigation into potential wrongdoing" within the government may seek qualified immunity under § 1983).

## INTRODUCTION

Plaintiff Curtis Blackwell reports learning of a "wild off-campus party" where an "alleged sexual assault . . . occurred." *Blackwell v. Simon*, No. 18-cv-1261, ECF No. 1 ¶¶ 37–38 (attached as Exhibit 2.)  And he alleges that he learned from a football player, after "inquir[ing] of several players," of this "potential sexual assault incident." *Id.* ¶ 39.  But Blackwell admits that he did not report the incident or any details he learned from his inquiries.

Jones Day found much the same thing in its "Independent Investigative Counsel" report (attached as Exhibit 1).  "[T]he evidence available," the firm wrote, "strongly suggests" that "[a] staff member"—whom Jones Day did not identify by name—"learned information about th[is] incident" and inquired further, but did not "report[] the information he learned through his investigation."  Ex. 1 at 12–13.[1]

Blackwell now sues Jones Day and one of its partners, insisting that this report, which largely tracks his own admissions, somehow violated his constitutional rights.  This is not Blackwell's first lawsuit relating to these events.  He previously sued some of the same parties and others.  *See, e.g.*, Ex. 2.  And those lawsuits did

---

[1] The Exhibits are indexed and attached to the Declaration of David S. Rutkowski.  Exhibit 1 is Jones Day's Independent Investigative Counsel Report, and is "considered part of the pleadings" because it is "referred to in the plaintiff's complaint and [is] central to h[is] claim[s]."  *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).  Exhibit 2 is Blackwell's Complaint in Case No. 18-cv-1261, and is incorporated in this Complaint, ECF No. 6 (hereinafter "Compl.").

not fare well—for Blackwell or his counsel.  In particular, in his previous federal lawsuit, Judge Neff dismissed the claims against the school officials with prejudice, sanctioned Blackwell's lawyers (the same counsel here), and ordered those counsel removed from the case and referred for discipline.  *See* ECF Nos. 3 & 10 (Defendant Kienbaum's Motions) (setting out this history).

Now Blackwell seeks to circumvent those rulings.  But this action is at least as groundless as his others.  Whether or not it should also result in sanctions (*see id.*), there can be no doubt it should be dismissed, for a host of reasons.  Blackwell wants the Court to read into the First Amendment a radical and novel right—the right of a public employee to keep sexual-assault allegations from his superiors.  And then he wants the Court to go further still, and wield this supposed "right" not against the State or its employees, but against a private law firm and one of its lawyers.

*No constitutional violation, much less by Jones Day or Gabel.*  The First Amendment does not grant a public employee the right "not to speak" by refusing to "report[] [an] alleged sexual assault."  Compl. ¶ 152.  Requiring that reporting, as MSU does, does not even *implicate* the First Amendment:  It requires no state-sponsored message, far less one with which Blackwell disagrees.  MSU's sexual-assault reporting policy is thus constitutional, as are the countless similar reporting policies of other public schools (and public employers) throughout the country, many of which have been implemented to comply with Title IX.  But even if remaining

silent in the face of a horrible crime somehow implicated the First Amendment, the policy here would not violate it because reporting sexual assault is part of an MSU employee's job duties.  And the Supreme Court has long held that a public employer may lawfully require its employees to "speak" as part of their official duties.

Nor could Jones Day or Gabel have possibly violated this fantastical constitutional right even if it existed.  Blackwell alleges that *MSU's* policy violates the Constitution; that *MSU* wrongfully terminated him; and that *MSU's* actions left him injured.  He cannot sue *Jones Day* or its lawyer for these things:  they had no control over MSU's policies, and no say in whether to discipline or terminate Blackwell.  All they did was author an external and independent report—ordered and released by MSU—that did not even mention Blackwell's name.  Jones Day and Gabel thus could not have possibly violated Blackwell's rights.

*No § 1983 claim in any event.*  Even if Blackwell had somehow alleged a violation caused by Jones Day and Gabel, he cannot sue them under § 1983 because they are not state actors—and they would be entitled to qualified immunity if they were.  Jones Day and Gabel are private citizens.  In their private capacities, as "external" counsel, Compl. ¶ 160, they performed an independent investigation for MSU.  By definition, therefore, they were *independent* from the State—and their one-off, external work for MSU did not transform them into the State.  But if it somehow did, then they would be entitled to qualified immunity because—whatever

else can be said of the "right" of a public employee to keep sexual-assault allegations from his superiors—it cannot be said that this "right" was clearly established. The Court should thus dismiss the claims against Jones Day and Gabel with prejudice.

## BACKGROUND

### A.    The Sexual Assault Underlying Jones Day's Investigation.

A young woman in January of 2017 reported that an MSU football player dragged her into the bathroom at a party, invited two other players to join him, and forced her to perform oral sex on all three of them. Prosecutors charged the first player with first-degree criminal sexual conduct—punishable by life in prison—and the other two with third-degree criminal sexual conduct. All three took a plea.[2]

The day after these crimes occurred, Blackwell learned of this "wild off-campus party" and discovered that some football players who attended could be "in trouble." Ex. 2 ¶ 38. He "inquired of several players," including one who told him that he had already reported the "potential sexual assault incident" to Coach Mark Dantonio. *Id.* ¶ 39. Blackwell spoke directly with the three players involved "to determine what had occurred," Ex. 1 at 9—in his words, to figure out if "they got into any trouble at the party," Ex. 2 ¶ 40. He also "communicated with a parent of

---

[2] *See* Dan Murphy, *Former MSU players sentenced to 3 years' probation*, ESPN (June 6, 2018), *available at* https://www.espn.com/college-football/story/_/id/23714711/former-michigan-state-players-josh-king-donnie-corley-demetric-vance-sentenced-three-years-probation-ordered-undergo-sexual-offender-treatment; *see also* Compl. ¶ 97.

one of those players [about] the incident." Ex. 1 at 9; *see* Ex. 2 ¶ 38. He claims to have been "mentoring the student athletes"—including with advice like, "[I]f you didn't do anything, you know, why are you concerned?" Ex. 2 ¶¶ 42–43.

Blackwell, however, "failed to report any information he learned" from these inquiries, either to MSU's higher-ups or to the police. Ex. 1 at 9.

### B. MSU Hires Jones Day as External Counsel to Investigate How the School Responded to the Sexual-Assault Allegations.

MSU hired Jones Day, not to investigate these crimes (the police were doing that), but "to perform an independent investigation of the football program's institutional response to [these] allegations of sexual assault." Ex. 1 at 1. In Blackwell's words, this would be "an external investigation of the football program and of th[is] January 2017 alleged sexual assault incident." Compl. ¶ 108.

And it was. Jones Day's investigation was "independent and external." Ex. 1 at 3 (footnote omitted). The "Jones Day attorneys who worked on this matter," including Gabel, "had not previously represented MSU, nor did they have any direct connection to the University" before or during this investigation. *Id.* at 3 n.2.

Jones Day's investigation was also thorough. The firm "conducted 35 interviews, including interviews with coaches, players, and administrative staff in the football program, as well as University employees in the Athletic Department, [Office of Institutional Equity], and MSU [police]." Ex. 1 at 4. Only one staff member refused to participate: Mr. Blackwell. *See id.*

### C.   Jones Day Finds that All Staff Members But Blackwell Complied with MSU's "Relationship Violence & Sexual Misconduct" Policy.

Jones Day's specific task was to independently "examine[] whether the football program, and individuals associated with the program, complied with MSU's 'Policy on Relationship Violence & Sexual Misconduct.'" Ex. 1 at 1.

This policy "governs the conduct of University employees, including members of the football staff, for reporting information regarding sexual misconduct." Ex. 1 at 5. When "they observe or learn about" a possible sexual assault, the policy requires them to "promptly report" those allegations to the police or to MSU's Office of Institutional Equity (which will then report to the police). *Id.* Staff members must also leave investigations to "[t]rained professionals"; they "should not attempt to investigate the matter" themselves. *Id.*

With respect to the alleged sexual assault in January 2017, Jones Day found that every MSU staff member followed this policy, except for Blackwell. Jones Day "presented in detail [these] factual findings to MSU's Board of Trustees," Ex. 1 at 13, but that presentation remains privileged and confidential.

### D.   MSU Releases a Public Version of Jones Day's Findings—Which Does Not Identify Blackwell.

At the Board's request, however, Jones Day also authored a written report, which "MSU officials publicly released." Compl. ¶ 140. This report summarized at a high level Jones Day's essential findings. The report spent most of its 13 pages

describing how "senior leaders within the football program and the [Athletic Department] complied with the [sexual-assault reporting] policy by promptly and accurately reporting the information they learned."  Ex. 1 at 1; *see id.* at 1–2, 4–8, 10–11.  That included Coach Dantonio and other football staff members.

But the report briefly mentioned, in a total of four paragraphs, a staff member for whom "[t]here [wa]s evidence" of a reporting-policy violation.  Ex. 1 at 3; *see id.* at 9, 12–13.  This staff member, the evidence showed, "learned information about the January 2017 incident" shortly after it occurred.  Ex. 1 at 12.  But rather than report anything, the staff member tried to "determine what happened."  *Id.* at 12–13.  This staff member's independent investigation and failure to report the information acquired likely violated the sexual-assault reporting policy, Jones Day concluded.

Jones Day, however, was careful not to identify this staff member.  "[T]o respect the privacy of those involved," the report explained, "details regarding the underlying incidents and the subsequent responses by University employees have not been included except where necessary for this public report."  Ex. 1 at 1 n.1.

### E.   Blackwell Sues Everyone Involved—in Three Separate Lawsuits.

Blackwell, as it turned out, identified himself—through this lawsuit and his other two.  In his Western District lawsuit, he sued two police officers (who supposedly detained him without probable cause), and MSU's president, athletic director, and former head football coach (who supposedly retaliated against him for

not participating in either the school's investigation of compliance with its sexual-assault reporting policy or the police's investigation of the underlying sexual assault).  Ex. 2.  And in the state lawsuit, he alleged that MSU officials defamed him, intentionally inflicted emotional distress on him, and fired him because of his race.  *See Blackwell v. Simon*, No. 18-cv-1261, ECF No. 229-2.

These lawsuits have not been met with success—to say the least.  In his federal lawsuit, for example, Judge Neff found that "Plaintiff's counsel violated Rule 11 and engaged in harassing conduct" against the defendants.  *Id.*, ECF No. 314 at 4.  She dismissed the claims against the school officials with prejudice, sanctioned Blackwell's lawyers (the same counsel here), and ordered those counsel removed from the case and referred for discipline.  *See id.* at 14.

A month after Judge Neff's order dismissing the claims, Blackwell filed a near-identical Complaint here.  *See* ECF No. 1 (June 6, 2020).  (He later amended the Complaint without changing the substance of any factual allegations related to Jones Day or Gabel.  *See* ECF No. 6 (July 20, 2020).)  Here Blackwell hurls the same accusations as before—ranging from charges of "unwarranted arrest and false imprisonment" to wrongful termination—against the same parties (MSU trustees, administrators, coaches, staff, and police officers).  *See, e.g.*, Compl. ¶¶ 100–33.  But in this lawsuit, those parties are not defendants.  Other than Coach Dantonio and Bill Beekman, the defendants here are different:  here Blackwell sues two lawyers and a

law firm who, even according to Blackwell, had nothing to do with his "arrest" or termination.  In Blackwell's telling, therefore, Jones Day and its partner Louis Gabel are background players for the events that form the basis of all three of his lawsuits.

To the extent this Complaint musters a cohesive story about what Jones Day and Gabel supposedly did to violate the Constitution, it appears to be this:  Jones Day and Gabel concluded that there was evidence that Blackwell had violated MSU's sexual-assault reporting policy, which Blackwell himself appears to concede in his description of his conduct.  Blackwell believes, however, that he did not *need* to report anything about the sexual assault because the First Amendment gave him the "right not to speak with officials" about it.  Compl. ¶ 149.  So Jones Day's report was "false and defamatory," as well as retaliatory (again according to Blackwell), when it found that an unnamed staff member may have violated this "unconstitutional" policy.  *Id.* ¶¶ 147, 156; *see id.* ¶¶ 167–69, 174.

For all this, Blackwell asserts two counts against Jones Day and Gabel under 42 U.S.C. § 1983:  a constitutional challenge to MSU's sexual-assault reporting policy and a First Amendment retaliation claim.  Both counts rest on there being a "First Amendment right" not to report alleged sexual assault.  *Id.* ¶¶ 152, 168.[3]

---

[3] Blackwell has not yet properly served either Jones Day or Gabel.  Counsel for Jones Day told Blackwell's counsel that these defendants were willing to waive service, but Blackwell would not take yes for an answer.  *See* Ex. 3.  Instead, over two months after the Complaint was filed, he tried to serve these defendants by certified mail, but that service was improper under Rule 4 and Michigan law.

## ARGUMENT

To state a constitutional claim under § 1983, the plaintiff must allege both that (1) the defendants' "actions caused the violation of a federal right," and that (2) the defendants "acted under color of state law." *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 612 (6th Cir. 2018). Blackwell cannot allege either.

## I. BLACKWELL FAILS TO ALLEGE A CONSTITUTIONAL VIOLATION BY ANYONE, FAR LESS JONES DAY OR GABEL.

Blackwell believes that public officials have the First Amendment right "not [to] report[] . . . alleged sexual assault to [school officials]." Compl. ¶ 152. No court has come close to reading that into our foundational law, and rightfully so. But even if Blackwell had that fantastical right, Jones Day and Gabel did not cause its violation, warranting dismissal twice over.

### A. The First Amendment Does Not Guarantee the "Right" of a Public Employee To Keep Sexual-Assault Allegations Secret.

Perhaps the easiest way to resolve this case is to deal head on with the overarching issue: There is simply no First Amendment right involved here. Because his two claims against Jones Day and Gabel depend on him having that constitutional right, *see* Compl. ¶¶ 152, 168, Blackwell cannot state a claim. *See, e.g.*, *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc).

But the harder part of this case is coming up with a case that is even closely analogous. Hard cases make bad law, they say, but really easy cases like this one often do not make law at all; frivolous claims are rarely pressed.

The framework, though, is clear enough—and it resolves the case against Blackwell.  A public employee's words or actions (including, sometimes, refusing to speak) must first implicate the First Amendment.  And then the employee must clear the hurdles of *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006), which recognizes that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom" of speech.  Under the *Garcetti* framework, the government can require a public employee to "speak" if his "expressions [are] made pursuant to his duties."  547 U.S. at 421; *see Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 340 (6th Cir. 2010).

These determinations are questions of law, resolvable now.  *Mayhew v. Town of Smyrna*, 856 F.3d 456, 464 (6th Cir. 2017).

**1.**  What Blackwell claims as a constitutional right—to refuse, for no apparent reason, to report sexual-assault allegations—is not protected "compelled speech."

Under the compelled-speech doctrine, the government cannot "require[] the utterance of a particular message" with which the speaker disagrees.  *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994); *see Kidwell v. City of Union*, 462 F.3d 620, 624 (6th Cir. 2006).  MSU, however, does no such thing.  It does not compel any "particular message" or position through its sexual-assault reporting policy.  It merely requires reporting of sexual assault, whatever its form.  Nor, thankfully, does

Blackwell claim to disagree with reporting sexual assault as a general matter.

This alone suffices to dismiss the Complaint: "A First Amendment protection against compelled speech" exists "only in the context of governmental compulsion to disseminate a particular" message. *United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995) ("no right to refrain from speaking" by refusing to answer questions from the IRS). When the government does not "require[] affirmation of a belief [or] an attitude of mind"—and instead requires only disclosure of neutral information—it has a free hand to regulate even ordinary citizens, *Coleman v. Miller*, 117 F.3d 527, 531 (11th Cir. 1997), and far more public employees, *see Evans-Marshall*, 624 F.3d at 340–41. So when (as here), the plaintiff "was not required to communicate the ideas or [expressions] of others as if they were h[is] own," the plaintiff's "First Amendment rights [a]re not implicated, still less violated." *Johnson-Kurek v. Abu-Absi*, 423 F.3d 590, 594–95 (6th Cir. 2005) (public school may require teacher to "explain to her students the precise requirements for obtaining a final grade").

Under this framework, MSU may lawfully require public employees like Blackwell to follow the sexual-assault reporting policy. Doing so did not force Blackwell to "express a belief or an idea," far less one with which he disagrees. *See, e.g.*, *Meriwether v. Trustees of Shawnee State Univ.*, 2019 WL 4222598, at *17 (S.D. Ohio Sept. 5, 2019), *adopted*, 2020 WL 704615 (S.D. Ohio Feb. 12, 2020). It is therefore constitutional. *See Johnson-Kurek*, 423 F.3d at 594–95; *cf., e.g.*, *EMW*

*Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 432 (6th Cir. 2019) (requiring disclosure of "truthful and non-misleading information" is constitutional).

This constitutional rule makes good sense, too.  Imagine a world in which Blackwell's claimed "right" carried the day.  A public school would be powerless to learn from its employees details about even horrific instances of sexual assault.  A public-school employee who saw another employee sexually assaulting children would have the *constitutional right* to remain perfectly silent.  Our public schools (not to mention all of our other public employers), however, have reporting policies in place to prevent exactly this.  *Cf., e.g.*, *Thomas*, 882 F.3d at 613 (surveying the state-imposed duty to report of "health care professionals," "medical personnel," "attorneys, teachers, school psychologists, and day care employees, among others").  Title IX even requires reporting procedures.  *See* 34 C.F.R. § 106.8.  Blackwell wants this Court to eviscerate all of those policies (and perhaps much of Title IX with them) under his misguided reading of the First Amendment.  This Court should decline his invitation—and should instead dismiss his Complaint.

**2.**  Nor would Blackwell have a claim even if being required to report sexual assault somehow implicated the First Amendment.  Such reporting was part of Blackwell's official job duties and is thus unprotected anyway.  This follows from a "straightforward application of *Garcetti*," which asks whether the employee was required to speak "pursuant to his ordinary job duties."  *Boulton v. Swanson*, 795

F.3d 526, 534 (6th Cir. 2015).  If he was, then his speech is unprotected.

Blackwell was required to report sexual assault as part of his ordinary job duties.  MSU's reporting policy expressly charges University employees to "report all relevant details about [an] alleged [sexual assault]" either to the police or to MSU's Office of Institutional Equity.  Ex. 1 at 13.  Reporting was thus an express duty of Blackwell's job and is accordingly unprotected.  *See, e.g.*, *J.W. v. Johnston Cty. Bd. of Educ.*, 2014 WL 4771613, at *10 (E.D.N.C. Sept. 24, 2014) (Plaintiff's speech "about [an] alleged sexual assault" was made "pursuant to her job duties as a teacher."); *see also, e.g.*, *Haynes v. City of Circleville*, 474 F.3d 357, 364 (6th Cir. 2007) (reporting problems at work was "made pursuant to [one's] professional duties"); *Housey v. Macomb County*, 534 F. App'x 316, 322 (6th Cir. 2013) (similar).

Even if not express, moreover, this duty would be implied.  "After *Garcetti*, [the Sixth Circuit has] held that most jobs carry with them an inherent duty of internal communication."  *Boulton v. Swanson*, 795 F.3d 526, 533 (6th Cir. 2015) (collecting cases); *see Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010).  And internal communication includes reporting alleged misconduct to one's supervisors.  *Mayhew*, 856 F.3d at 464–65; *see, e.g.*, *Henderson v. City of Flint*, 751 F. App'x 618, 623–24 (6th Cir. 2018) ("reporting unlawful or unethical behavior" is unprotected; affirming this Court's decision in relevant part).

None of this changes when, as here, the employee *refuses* to speak.  Although

"[m]ost free speech cases involving public employees center on compelled silence rather than compelled speech," the "difference is without constitutional significance." *Miller v. Davis*, 123 F. Supp. 3d 924, 941 n.12 (E.D. Ky. 2015). Courts have thus applied the same public-employee framework to reject "compelled speech" claims when the speech at issue is compelled by the employee's ordinary job duties. *See, e.g.*, *Padilla v. S. Harrison R-II Sch. Dist.*, 181 F.3d 992, 997 (8th Cir. 1999) (teacher's "compelled testimony" in a sex-related investigation not "entitled to First Amendment protection"); *Kluge v. Brownsburg Cmty. Sch. Corp.*, 432 F. Supp. 3d 823, 839 (S.D. Ind. 2020) (teacher's refusal to speak as required by a school policy not protected); *Gwinnett v. Sw. Fla. Reg'l Planning Council*, 407 F. Supp. 3d 1273, 1278–81 (M.D. Fla. 2019) ("refus[ing] to speak about [an] assault" not protected); *LaSalle v. P.R. Elec. Power Auth.*, 144 F. Supp. 3d 274, 279 (D.P.R. 2015) (public employee could be "required to offer testimony"). The Supreme Court, too, has held that public employers may require their employees to disclose neutral information as part of their jobs. *NASA v. Nelson*, 562 U.S. 134, 148–52 (2011). MSU's sexual-assault reporting policy could do just that—lawfully require Blackwell to report details of a sexual assault of an MSU student.

Because Blackwell's "speech" was part of his official duties, it is "beside the point" whether the content of the speech was a matter of "public concern," *Evans-Marshall*, 624 F.3d at 340, as Blackwell alleges, Compl. ¶ 153. Blackwell's two

claims against Jones Day and Gabel therefore fail as a matter of law.

**B.   Jones Day and Gabel Did Not Cause Any Constitutional Violation.**

Blackwell's Complaint suffers from many more problems. One of them is that, even assuming MSU's reporting policy violated Blackwell's rights, Blackwell alleges that this was *MSU's* doing, not Jones Day's.

Section 1983 requires the plaintiff to connect an alleged violation to "state conduct"; it "does not permit individuals to sue [defendants] in the abstract." *Thomas*, 882 F.3d at 614. The plaintiff must therefore show that the entities sued *proximately caused* the constitutional violation alleged. *See Gazette v. City of Pontiac*, 41 F.3d 1061, 1066 (6th Cir. 1994). Blackwell cannot do so: Jones Day and Gabel did not cause any constitutional violation (even assuming one existed).

When it comes to the policy (Count One), causation is straightforward: It was MSU's policy, not Jones Day's, and thus only MSU could have caused the violation. Jones Day has no control over the policy. It is thus unclear how this Court could even grant Blackwell's requested relief—declaring an MSU policy unconstitutional, *see* Compl. p. 28—when no one from MSU is even part of this claim. But that question aside, the Court can simply dismiss this claim for failure to allege that *Jones Day or Gabel* (as opposed to MSU, as alleged) caused the purported violation.

The same goes for the retaliation claim (Count Two). Blackwell alleges that "Jones [Day] and Gab[el] retaliated against [him]" by reporting "information that

was damaging to [his] reputation and good name," and were motivated by his "exercising his right not to speak."  Compl. ¶ 174–75.

For one thing, Jones Day's report *does not mention Blackwell's name*.  Ex. 1.  Nor does Blackwell allege that Jones Day or Gabel publicly identified him as the person in the report.  And so the report itself could not have been "damaging to [Blackwell's] reputation and good name."  Compl. ¶ 174.  This defeats causation, for it shows that someone *other than Jones Day or Gabel* must have caused the alleged harm.  It also defeats the "adverse action" element of retaliation, for neither Jones Day nor Gabel "publicly disclosed" Blackwell's name or took adverse action against him.  *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583–84 (6th Cir. 2012).

For another thing, neither Jones Day nor Gabel released Jones Day's findings or the report to the public; MSU did.  Blackwell admits as much.  Compl. ¶ 140.  Here again, then, according to Blackwell's own pleading, *MSU* necessarily caused any possible adverse action against Blackwell; Jones Day and Gabel did not.

By trying to ascribe MSU's actions to Jones Day and Gabel, Blackwell pleads himself out of causation—and thus out of a § 1983 claim against these defendants, even if he could convince the Court to adopt his radical First Amendment right.

## II.   BLACKWELL HAS NO § 1983 CLAIM AGAINST JONES DAY AND GABEL IN ANY EVENT.

It gets worse still for Blackwell.  Even if he had somehow alleged a violation caused by Jones Day and Gabel, he cannot sue them under § 1983 because they are

not state actors.  And if they are, as Blackwell insists, Blackwell *still* cannot prevail, because then Jones Day and Gabel would have qualified immunity.

### A.     Jones Day and Gabel Are Not State Actors.

Blackwell alleges that Jones Day and Gabel, private citizens both, became state actors when MSU "engaged" them to "conduct an external investigation." Compl. ¶ 136.  Because they were "agents" of (read: lawyers for) MSU, Blackwell maintains that they necessarily were "state actors" under § 1983.  *Id.* ¶¶ 137–38.

But that does not follow.  "[T]he fact that the government licenses[ or] contracts with . . . a private entity does not convert the private entity into a state actor." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1931 (2019); *see Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).  Thus, an "agent" of a public institution—such as "a lawyer representing a client"—does *not* automatically become "a state actor within the meaning of § 1983." *Newsome v. Merz*, 17 F. App'x 343, 345 (6th Cir. 2001).  To the contrary, "[i]t is well-settled that attorneys performing their traditional functions as counsel are not state actors for purposes of § 1983." *Grier v. Wayne Cnty. Cir. Ct.*, 2007 WL 1106143, at *2 (E.D. Mich. Apr. 12, 2007) (Cox, J.); *see Polk County v. Dodson*, 454 U.S. 312, 318–19 (1981).

Even more so, a private lawyer performing an "external" and "independent" investigation (Compl. ¶¶ 108, 137) cannot, by definition, be a state actor.  When all the outside counsel does is "advise the [public entity]," that is "not an action that can

be attributed to the state"; "[i]t is by its nature separate from and outside the state." *Dubuc v. Green Oak Twp.*, 482 F. App'x 128, 133 (6th Cir. 2012) (affirming sanctions against a plaintiff who argued otherwise).  So when Jones Day and Gabel performed their "limited" engagement—the one-off, independent investigation—they were "not acting 'under color of state law' for the purposes of a section 1983 suit." *E.g.*, *Raines v. Indianapolis Pub. Sch.*, 52 F. App'x 828, 830 (7th Cir. 2002) (per curiam); *see also, e.g.*, *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 213 (E.D.N.Y. 2009) ("private, outside legal counsel" to a school district not state actor despite recommending to the school district to fire an employee).

Blackwell alleges no other facts that could make Jones Day or Gabel state actors under any of the Sixth Circuit's three state-action tests.  *See Plummer v. Detroit Police Dep't*, 2017 WL 1091260, at *3 (E.D. Mich. Mar. 23, 2017) (Cox, J.).

1.  Jones Day and Gabel were not performing a *public function*:  Independently investigating is not a function reserved "exclusively" for the State.  *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978); *see Enjoi Transp., LLC v. City of Detroit*, 2019 WL 764237, at *7 (E.D. Mich. Feb. 21, 2019) (collecting cases).

2.  Blackwell does not adequately allege that MSU "significantly encouraged" or "coerced" Jones Day or Gabel into making any particular findings, and thus Blackwell does not satisfy the *state-compulsion* test.  *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995).  To the contrary, Blackwell alleges that MSU hired Jones

Day because it wanted an *external* investigation.  *See* Compl. ¶¶ 108, 137.  Because, even according to the Complaint, Jones Day and Gabel had discretion to act as they thought best, they were not state actors under this test.  *Cf. Thomas*, 882 F.3d at 614.

Blackwell's conclusory assertions that Jones Day and Gabel "conspired" with MSU "to generate a biased report" (Compl. ¶¶ 169–72) are just that:  conclusory assertions, insufficient to satisfy *Twombly* and *Iqbal*.  They are also false, and dangerously so.  Blackwell alleges that "Jones Day has a history of conspiring with governmental entities in order to carry out hidden political agendas," and he cites as the only example that one of Jones Day's "partners [Kevin Orr] serve[d] as the Emergency Manager for the City of Detroit."  Compl. ¶¶ 171–72.  It is hard to see how that is possibly connected to anything in this case, or how helping Detroit through a publicly filed bankruptcy proceeding is a "conspiracy" to carry out a "hidden political agenda."[4]  Blackwell and his lawyer here, perhaps carrying out their own agenda, teeter on the brink of sanctionable conduct (yet again).  But, in any event, as Defendant Kienbaum points out (ECF No. 3 at 10–12), a law firm cannot "conspire" with its client for purposes of the state-action doctrine.

3.   Nor, finally, did Jones Day and Gabel develop a "sufficiently close

---

[4] Given the judge's sweeping praise of Jones Day's work in the Detroit bankruptcy case, *In re City of Detroit*, 2015 WL 603888, at *27 (Bankr. E.D. Mich. Feb. 12, 2015), Blackwell's allegation that the firm's work was a "conspiracy" to carry out a "hidden political agenda" rings particularly hollow.

relationship" with MSU so that "the[ir] action[s] . . . may be attributed to the state" under the *nexus* test. *Ellison*, 48 F.3d at 195. "[A] plaintiff must show more than joint activity with the state to prove [state action]" under this test; the plaintiff must "demonstrate 'pervasive entwinement' between the two entities surpassing that of a mere contractual relationship." *Plummer*, 2017 WL 1091260, at *3 (Cox, J.). There is not even "joint activity" here, though, far less "pervasive entwinement." There is only a contractual relationship—and one in which the whole point was for Jones Day and Gabel to act externally and independently. They acted "on [their] own behalf" in generating the report, and are thus not state actors. *See Ghandi v. Police Dep't of City of Detroit*, 823 F.2d 959, 964 (6th Cir. 1987).

All Blackwell has, in the end, is a bare assertion of state action, which "is no longer, if it ever was, sufficient to survive a motion to dismiss." *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014). His Complaint thus must be dismissed.

**B.    If Jones Day and Gabel Were State Actors, They Receive Qualified Immunity.**

The irony for Blackwell is that if he could somehow overcome all of this contrary caselaw and show that Jones Day and Gabel—private, external counsel performing an independent investigation—really were the "State," that would get him nowhere. Blackwell would then lose on qualified-immunity grounds.

**1.**  The Supreme Court has held that lawyers retained by the government to "conduct[] an official investigation into potential wrongdoing" within the

government are entitled to seek qualified immunity under § 1983.  *Filarsky v. Delia*, 566 U.S. 377, 393–94 (2012).  In *Filarsky*, just as here, a state entity hired a lawyer to conduct a "formal internal affairs investigation" of one of its employees.  *Id.* at 380–81.  The question presented was whether the private lawyer (who the Supreme Court assumed without deciding was a state actor) could seek immunity.  The Court held that he could.  The "common law did not draw a distinction [when it came to immunity] between public servants and private individuals engaged in public service," the Court held, and the purposes of immunity were met when it came to an internal-affairs investigation.  *Id.* at 387–91.  And so the private lawyer performing that "government assignment" could seek qualified immunity.  *Id.* at 391.  So can Jones Day and Gabel.

This has long been the rule in the Sixth Circuit as well:  A city's outside counsel—the "lawyers and their firm"—are "eligible for qualified immunity." *Cullinan v. Abramson*, 128 F.3d 301, 310 (6th Cir. 1997); *see Arabbo v. City of Burton*, 689 F. App'x 418, 421 (6th Cir. 2017).  If Jones Day and Gabel qualify as state actors, therefore, they may receive qualified immunity.

**2.**  To overcome Jones Day's and Gabel's qualified immunity (assuming they were state actors), Blackwell must show that their conduct violated a "clearly established" right—that his sought-after right is settled "beyond debate" and that Jones Day and Gabel were "plainly incompetent" or "knowingly violate[d] the law"

in concluding otherwise.  *White v. Pauly*, 137 S. Ct. 548, 551 (2017).

Any argument to that effect would be frivolous.  No court has come anywhere near invalidating a policy that requires a public-school employee to report a sexual assault that another person in the school community suffered.  That holding would be radical indeed.  It would invalidate, in one fell swoop, countless policies from around the country requiring exactly that of a variety of public employees.  *See, e.g.*, *Thomas*, 882 F.3d at 613.  To the extent that any court has seen a case requesting this sort of a right, the court has had no trouble in swiftly dismissing it.  *See, e.g.*, *Alexander v. City of Round Rock*, 854 F.3d 298, 308–09 (5th Cir. 2017) (granting qualified immunity in a case seeking "a First Amendment right not to answer an officer's questions during a stop"); *Tunnell v. Crosby*, 657 F. Supp. 2d 1263, 1264–66 (N.D. Fla. 2009) (same, seeking a public employee's right to refuse to make a statement as part of an investigation).  This Court should just as swiftly do the same.

"[I]n many public employee free speech cases[,] it would be unclear to a reasonable official what the outcome" should be, and thus qualified immunity is typically proper.  *Williams v. Kentucky*, 24 F.3d 1526, 1537 (6th Cir. 1994).  But here it was perfectly clear—just not the way Blackwell needs it to be—that requiring Blackwell to report the alleged sexual assault was perfectly constitutional.  And if it were somehow unconstitutional, that would be the most novel of holdings, entitling Jones Day and Gabel to qualified immunity.  Dismissal, in the end, is the only option.

## CONCLUSION

Blackwell's Complaint fails on a number of independent grounds:

- Blackwell does not allege a First Amendment violation, both because reporting sexual-assault allegations does not implicate the "compelled speech" doctrine, and because, even if it did, MSU could require that reporting under *Garcetti*.

- Blackwell does not allege that Jones Day or Gabel caused any constitutional violation.

- Jones Day and Gabel are not state actors, and if they somehow were, then they would be entitled to qualified immunity.

For any and all of these reasons, the Court should grant Jones Day's and Gabel's

motion to dismiss.


Dated:  August 13, 2020                    Respectfully submitted,


                                           /s/ Jeffrey J. Jones


Louis A. Chaiten                           Jeffrey J. Jones
James R. Saywell                           David S. Rutkowski
  (applications forthcoming)                JONES DAY
JONES DAY                                   150 West Jefferson, Suite 2100
901 Lakeside Avenue East                    Detroit, Michigan 48226-4438
Cleveland, Ohio 44114-1190                  (P) 313.733.3939
T: (216) 586-3939                           (F) 313.230.7997
F: (216) 579-0212                           jjjones@jonesday.com
lachaiten@jonesday.com                      dsrutkowski@jonesday.com
jsaywell@jonesday.com

                                           *Counsel for Defendants Jones Day
                                           and Louis P. Gabel*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 13, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court of the Eastern District of Michigan, using the CM/ECF system, which will send notification of such filing to all counsel of record at the email addresses that they have provided to the Court.

/s/ Jeffrey J. Jones

*On Behalf of Defendants*
*Jones Day and Louis Gabel*