UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS E. BLACKWELL, II,

     Plaintiff,

v.                                                                      Case No. 20-cv-11493

JONES DAY LAW FIRM, a corporation,                Judge Sean F. Cox
MARK DANTONIO, in his individual
Capacity as the Head Football Coach for           Magistrate Judge David R. Grand
Michigan State University, LOUIS P. GABEL,
in his individual capacity as a lawyer for the
Jones Day Law Firm and outside counsel for
Michigan State University, and THOMAS
KIENBAUM, in his individual capacity as
counsel for Mark Dantonio, Mark Hollis,
and Lou Anna Simon, BILL BEEKMAN, in
his individual capacity as the Athletic Director
for Michigan State University,

     Defendants.

_____/

**DEFENDANTS MARK DANTONIO AND WILLIAM BEEKMAN'S
MOTION TO DISMISS, FOR JUDGMENT AS A MATTER OF LAW,
<u>AND FOR SANCTIONS</u>**

     Defendants Mark Dantonio and William Beekman move to dismiss the claims against them

pursuant to Rule 12(b)(6), for judgment as a matter of law pursuant Rule 56, and for sanctions

under 28 U.S.C. § 1927 and the Court's inherent authority. In support of its motion, Defendants

rely upon its accompanying brief and supplementary documents. The undersigned sought

Plaintiff's concurrence in the relief requested in this motion on September 4, 2020. Plaintiff

informed the undersigned that he does not agree to the relief requested.

WHERFORE, Defendants respectfully requests this Court dismiss the claims against them pursuant to Rule 12(b)(6), enter judgment as a matter of law pursuant Rule 56, and issue sanctions under 28 U.S.C. § 1927 and the Court's inherent authority.

Respectfully submitted,

Dated: September 16, 2020

_____

Uriel Abt
Attorney for Defendants Dantonio and Beekman

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS E. BLACKWELL, II,

     Plaintiff,

v.

                                     Case No. 20-cv-11493

JONES DAY LAW FIRM, a corporation,       Judge Sean F. Cox
MARK DANTONIO, in his individual
Capacity as the Head Football Coach for    Magistrate Judge David R. Grand
Michigan State University, LOUIS P. GABEL,
in his individual capacity as a lawyer for the
Jones Day Law Firm and outside counsel for
Michigan State University, and THOMAS
KIENBAUM, in his individual capacity as
counsel for Mark Dantonio, Mark Hollis,
and Lou Anna Simon, BILL BEEKMAN, in
his individual capacity as the Athletic Director
for Michigan State University,

     Defendants.

_____/

**BRIEF IN SUPPORT OF MARK DANTONIO AND WILLIAM BEEKMAN'S MOTION
TO DISMISS, FOR JUDGMENT AS A MATTER OF LAW, AND FOR SANCTIONS**

## <u>TABLE OF CONTENTS</u>

Concise Statement of Issues Presented ................................................................. ii

Controlling or Most Appropriate Authority....................................................... iii

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT ........................................................................................................4

    A.  Blackwell has not sufficiently alleged First Amendment retaliation.................4

        1.  Plaintiff's improper filings in the Western District Litigation are
            not protected activity.....................................................................................5

        2.  Blackwell has not plausibly alleged any other protected conduct
            motivated the purportedly retaliatory statements.........................................5

        3.  Plaintiff was not subject to an adverse action. ............................................6

    B.  Dantonio was not a state actor when defending himself in the Western
       District Litigation..........................................................................................10

    C.  There was no conspiracy between Beekman, Dantonio and Kienbaum..........11

    D.  Even if Plaintiff had pled a viable § 1983 claim, Dantonio and Beekman
       would be entitled to qualified immunity.........................................................12

    E.  Paterson and Blackwell should be sanctioned. ...............................................13

## <u>INDEX OF AUTHORITIES</u>

<u>Federal Cases</u>

*Alzheimer's Found of Am, Inc v Alzheimer's Disease & Related Disorders Ass'n, Inc*,
  796 F Supp 2d 458 (SDNY, 2011)....................................................................10

*Bachi-Reffitt v. Reffitt*, No. 1:17-CV-263, 2017 WL 5998112 (W.D. Mich.
  Dec. 4, 2017), *aff'd*, 802 F. App'x 913 (6th Cir. 2020).......................................4

*Blackwell v. Dantonio*, et al., 18-cv-1261 (W.D. Mich.).............................3-5, 7, 9, 11-15

*Camer v Seattle Post-Intelligencer*, 45 Wash App 29 (1986) ...........................................10

*Carmack v. City of Detroit*, No. 18-cv-11018, 2019 WL 4670363
  (E.D. Mich. Sept. 25, 2019)............................................................................16

*Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642
  (6th Cir. 2006)............................................................................................2, 15

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) ..............2, 8

*Clark v. EA Entm't Television, LLC*, 60 F. Supp. 3d 838 (M.D. Tenn. 2014) ....................6

*Davis v Covenant Presbyterian Church of Nashville*, 2015 WL 5766685
  (Tenn Ct App, Sept 30, 2015)............................................................................9

*Davis v. Johnson*, 664 F. App'x 446 (6th Cir. 2016).......................................................16

*D.C. v. Wesby*, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018) ................................................14

*Dye v. Office of the Racing Comm'n*, 702 F.3d 286 (6th Cir. 2012) ..............................2, 7

*GetFugu, Inc v Patton Boggs LLP*, 220 Cal App 4th 141, 156 (2013)..............................10

*Jacobs v The Oath for Louisiana, Inc*, 221 So 3d 241 (La App 2017)..............................10

*Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613 (6th Cir. 2019) .....2, 14

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005)...................................................2, 8, 9, 15

*Porter v Saar*, 260 AD2d 165 (NY App Div 1999)...........................................................10

Index of Authorities, cont.

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642
 (6th Cir. 2006)...........................................................................................................15

*Short v. Oaks Corr. Facility*, 129 F. App'x 278 (6th Cir. 2005) ......................................13

*Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003) ....................................................2, 14

*Tahfs v. Proctor*, 316 F.3d 584 (6th Cir. 2003) ................................................................12

*United States v. Miner*, 774 F.3d 336 (6th Cir. 2014) ....................................................2, 7

*Waters v. City of Morristown*, TN, 242 F.3d 353 (6th Cir. 2001) ..............................12, 13

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580 (6th Cir. 2012)..................2, 6, 8, 10, 11, 15

Rules and Statutes

28 U.S.C. § 1927...............................................................................................................15

Fed. R. Civ. P. 56(b) .......................................................................................................3, 13

## CONCISE STATEMENT OF ISSUES PRESENTED

**1(A):** Is sanctionable litigation misconduct protected by the First Amendment?

**1(B):** Has Plaintiff plausibly alleged that statements made in 2020 were motivated by the filing of a complaint 14 months earlier when the statements were made immediately after, and in response to press inquiries about, an improper filing in 2020?

**1(C):** Is a general denial of litigation allegations or a statement of true, non-confidential fact about Plaintiff's conduct an adverse action for purposes of First Amendment retaliation?

**2:** Are public employees state actors for purpose of § 1983 when they are defending themselves in litigation in which they face individual liability?

**3:** Can there be a conspiracy when there is no genuine issue of material fact that the purported conspirators never coordinated or communicated in any way?

**4:** Are defendants entitled to qualified immunity where the controlling case law suggests that the purportedly retaliatory statements cannot constitute adverse actions and are themselves protected First Amendment speech?

**5:** Should Plaintiff and his attorney be sanctioned when their history of litigation misconduct and their false allegations in this lawsuit demonstrate bad faith?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

**1(A):** *United States v. Miner*, 774 F.3d 336, 347 (6th Cir. 2014) ("[S]omeone who files a frivolous lawsuit may legitimately be punished for malicious prosecution or abuse of process. At that point, in fact, the defendant is no longer exercising a constitutional right[.]")

**1(B):** *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 377 (6th Cir. 2011) ("vague and conclusory allegations of nefarious intent and motivation by officials" are not sufficient to establish motivation at the pleading stage); *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012) ("A lapse of more than two years between the protected activity and the adverse employment action is simply insufficient to show a causal connection based solely on a temporal-proximity theory.")

**1(C):** *Mezibov v. Allen*, 411 F.3d 712, 721–22 (6th Cir. 2005) ("[Plaintiff] filed public motions with the court accusing [Defendant] of unethical conduct. It would be inconsistent with core First Amendment principles and basic notions of fairness not to allow [Defendant] to respond to these allegations to the extent his out-of-court comments were not defamatory, even if that response was (quite naturally) prompted by constitutionally protected speech by [Plaintiff].")**;** *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584–85 (6th Cir. 2012) ("when a plaintiff's alleged adverse action is inconsequential, resulting in nothing more than a de minimis injury, the claim is properly dismissed as a matter of law. Indeed, it trivializes the First Amendment to allow plaintiffs to bring claims for any adverse action, no matter how minor.") (cleaned up)

**2:** *Waters v. City of Morristown*, TN, 242 F.3d 353, 359 (6th Cir. 2001) ("a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law")

**3:** *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (dismissing conspiracy claim where there is no evidence that parties were not acting independently)

**4:** *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 626 (6th Cir. 2019) (In determining whether government employees are entitled to qualified immunity "The legal principle [at issue] must clearly prohibit the official's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable official that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity.")

**5:** *Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (court has "the inherent power to assess attorney's fees against counsel who willfully abuse judicial processes or who otherwise act in bad faith")

# INTRODUCTION

Plaintiff Curtis Blackwell brings claims of First Amendment retaliation against defendants Mark Dantonio and William Beekman. The alleged retaliation relates to another matter filed by Blackwell in the Western District of Michigan, *Blackwell v. Dantonio*, et al., 18-cv-1261 (W.D. Mich.) (the "Western District Litigation"). Specifically, in Counts III and IV of the Amended Complaint here, Blackwell alleges that public statements by Thomas Kienbaum (Dantonio's attorney in the Western District Ligation) and William Beekman immediately following a filing in the Western District Litigation that led to sanctions against Blackwell and his attorneys constitute First Amendment retaliation. These counts should be dismissed pursuant to Rule 12(b)(6) or Rule 56 for at least six independent reasons.

*First*, Blackwell's litigation misconduct is not protected by the First Amendment.

*Second*, to the extent Blackwell attempts to plead that Kienbaum and Beekman's statements were in retaliation for any other activity, he has not sufficiently alleged that it is causally connected to the statements he claims constitute retaliation.

*Third*, Kienbaum and Beekman's statements do not constitute adverse actions for purposes of a First Amendment retaliation claim.

*Fourth*, Dantonio is not a state actor with respect to his defense of the Western District Litigation.

*Fifth*, Dantonio and Beekman are entitled to judgment as a matter of law to the extent Blackwell alleges a conspiracy between them and Kienbaum.

*Sixth*, even if all this were not true, Dantonio and Beekman are entitled to qualified immunity.

For all of these reasons, the counts against Dantonio and Beekman should be dismissed. In addition, Blackwell and Paterson have filed this lawsuit without a good faith basis in fact or law solely for the purpose of continue their harassment campaign. They should be sanctioned.

## BACKGROUND

In November 2018, Plaintiff filed a lawsuit against Dantonio and other MSU officials claiming that his term contract was not renewed in retaliation for his refusal to cooperate in a sexual assault investigation (the "Western District Litigation"). (Complaint in the Western District Litigation, **Exhibit A**.)[1] Blackwell framed this as a § 1983 claim for a violation of his Fifth Amendment right against self-incrimination. (*Id.*)

Over the course of discovery Blackwell and his attorneys engaged in a steady stream of litigation misconduct, mostly related to sham motions filed for the purpose of generating negative press coverage for the defendants. (March 20, 2020 Order, Report and Recommendation, and Referral of Judge Sally J. Berens (detailing history of misconduct, admonishments, and sanctions), **Exhibit B**.) They were sanctioned twice and repeatedly admonished that continued misconduct would result in more serious sanctions. (*Id.*)

In early January 2020, Mark Dantonio sat for a deposition and explained in detail the lawful reasons he decided not to renew Blackwell's contract, essentially killing Blackwell's case. On January 29, 2020, Plaintiff filed a discovery motion that, despite having nothing to do with Dantonio, included the following footnote:

> It is important to inform the Court that Defendant Dantonio's sworn deposition testimony may have revealed major NCAA violations that were committed by Defendant Dantonio and MSU. Additionally, it is also important to inform the Court that Defendant Dantonio may have committed perjury during his deposition.

---

[1] The court may take judicial notice of the filings and court rulings in the Western District Litigation at the pleading stage. *Bachi-Reffitt v. Reffitt*, No. 1:17-CV-263, 2017 WL 5998112, at *5 (W.D. Mich. Dec. 4, 2017), *aff'd*, 802 F. App'x 913 (6th Cir. 2020).

(Exhibit B, at 6,7.)[2] As Judge Berens and Judge Neff both found, this footnote was intended to, and did, create a minor media frenzy, did not serve any litigation purpose, and was included in the public filing solely to harass Dantonio. (Exhibit B, at 6,7; May 20, 2020 Order by Judge Janet T. Neff Denying Objections and Adopting Report and Recommendation, **Exhibit C**.) Because of this and the prior litigation misconduct, Paterson and Warnicke were removed from the case, Paterson was referred for discipline in the Western District, the claims against Dantonio were dismissed with prejudice, and a monetary sanction of over $50,000 was imposed. (See Exhibit B, Exhibit C, and June 9, 2020 Order Awarding Monetary Sanctions, **Exhibit D**, at 7.)[3]

The day after Blackwell filed the January 29 motion, in response to a press inquiry about allegations in motion, Tom Kienbaum stated:

> Any assertion that there was a NCAA violation at any time, other than Mr. Blackwell's, which is a matter of record, let alone disclosed by this deposition, is false.  In fairness, if Blackwell wants to talk about NCAA violations . . . the only one that we're familiar with in this context is the one that he caused. It was Curtis Blackwell's action in trying to peddle his camp to Rutgers and Maryland at a time when he was still on the payroll of Michigan State.

---

[2] Judge Berens' Order, Report, and Recommendation mistakenly states that the offending motion was filed on January 30. It was filed on January 29. (See *Blackwell v. Dantonio*, et al., 18-cv-1261, Docket Entry No. 170 (W.D. Mich.).)

[3] The allegations in the footnote were also not true, as Judge Berens subsequently held. Blackwell later brought a motion to sanction Dantonio for allegedly committing "perjury" in connection with purported "NCAA violations." Judge Berens held that Plaintiff did not establish that Dantonio committed "perjury" and Plaintiff's suggestion that he did was based on mischaracterizations of Dantonio's and other witnesses' testimony. (June 10, 2020 Order, **Exhibit E**.) She denied the motion and sanctioned Plaintiff another $2,000 because the motion was baseless and was brought in bad faith. (*Id.*)

(Amend. Compl. at ¶ 199 (cleaned up) (quoting Matt Wenzel, *Dantonio's Lawyer calls lawsuit claims of possible Major NCAA Violations by MSU "False,"* MLive.com, Jan. 30, 2020, **Exhibit F**).)[4]

Similarly, several days later, on February 4, 2020, at a press conference held in connection with Dantonio's retirement as MSU's head football coach, William Beekman was asked to comment on the allegations in Blackwell's filing. He stated:

> To the best of our knowledge, as I understand the allegations, they're patently false. We'll be happy to defend that in the court of law. Insofar as there are ongoing legal issues, I'm not sure there's a whole lot more I can say.

(September 15, 2020 Affidavit of William Beekman, **Exhibit G**.) (A video of the press conference can be found at https://www.youtube.com/watch?v=A-12rGDZ61o (last visited on September 14, 2020) with the question and answer quoted above beginning at the 18:25 mark.)

These are the two statements Blackwell now claims constitute First Amendment retaliation. For the reasons stated below, Blackwell's claims against Dantonio and Beekman should be dismissed with prejudice and Blackwell and Paterson should be sanctioned.

## ARGUMENT

### A. Blackwell has not sufficiently alleged First Amendment retaliation.

In order to state a claim of First Amendment retaliation, Plaintiff must sufficiently plead that he engaged in protected activity, that he suffered an adverse action that would deter a person of ordinary firmness from engaging in such activity, and that the adverse action was motivated by the protected activity. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Here, Plaintiff's claims fail on all three prongs.

---

[4] The court may take judicial notice of the complete, publicly available statements of defendants Kienbaum and Beekman that Plaintiff claims are retaliatory at the pleading stage. *Clark v. EA Entm't Television, LLC*, 60 F. Supp. 3d 838, 847 (M.D. Tenn. 2014) (taking judicial notice of television program that plaintiff alleged was defamatory).

1. **Plaintiff's improper filings in the Western District Litigation are not protected activity.**

Although Plaintiff's allegations are vague, the only conduct that he can plausibly allege led to Kienbaum and Beekman's statements is his January 29 court filing. The statements occurred in the days immediately following that filing and both statements were in response to press inquiries about the allegations in that filing.

Sham court filings and abuse of the legal system are not protected by the First Amendment. *United States v. Miner*, 774 F.3d 336, 347 (6th Cir. 2014) ("[S]omeone who files a frivolous lawsuit may legitimately be punished for malicious prosecution or abuse of process. At that point, in fact, the defendant is no longer exercising a constitutional right[.]"). The purportedly protected activity here, however, was exactly that. On January 29, Blackwell, through his attorneys, filed a discovery motion in which he made the false and irrelevant statements that Dantonio "revealed major NCAA violations" and "may have committed perjury" in his deposition. (Exhibit B, at 6,7.) The court found that these statements had no litigation purpose and were made to attract press attention and harass the defendants. (*Id.*) Severe sanctions were imposed as result. (*Id.* at 2.) Because Plaintiff's sanctionable court filings are not protected by the First Amendment, his claim should be dismissed at the outset.

2. **Blackwell has not plausibly alleged any other protected conduct motivated the purportedly retaliatory statements.**

Blackwell appears to claim that Kienbaum and Beekman's statements on January 30, 2020 and February 4, 2020 were in response to his initiating the Western District Litigation almost 14 months earlier in November 2018. The Sixth Circuit has held that a causal connection cannot be inferred where a long period of time elapses between the protected activity and the claimed retaliation absent some other allegations plausibly establishing a connection. *Dye v.*

*Office of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012). Thus, unless Plaintiff pleads

facts that would explain such a long gap between the purported protected activity and retaliation,

his claim should be dismissed. But here, Plaintiff does not allege any facts that would allow the

court to draw the reasonable inference that statements, coming so long after the filing of the

complaint and so soon after the January 29 filing, were motivated by the former and not the later,

so his claim should be dismissed. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365,

377 (6th Cir. 2011) ("vague and conclusory allegations of nefarious intent and motivation by

officials" not sufficient to establish motivation at the pleading stage).

    And this is not a deficiency that Blackwell can fix. The timing and context of the

purportedly retaliatory statements—immediately after and in response to press inquiries about

the January 29 filing—show that the statements at issue were occasioned by the January 29

filing. No other inference is plausible. Plaintiff cannot, in good faith, plead around this fact.

    **3.  Plaintiff was not subject to an adverse action.**

    Even if Plaintiff had engaged in protected activity, his claim would still fail. Meeting

speech with speech generally will not constitute First Amendment retaliation. *Mezibov v. Allen*,

411 F.3d 712, 721–22 (6th Cir. 2005). This is for two reasons. First, government officials have a

First Amendment right to respond to public accusations. *Id.* at 722. Second, regardless of First

Amendment protection, claimed retaliatory speech does not, except in unusual circumstances,

cause the type of harm that would deter a person of ordinary firmness from engaging in protected

activity. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584–85 (6th Cir. 2012) (citing the

disclosure of confidential and "humiliating details" of a rape as the type of unusual circumstance

where retaliatory speech could deter protected activity). Additionally, a plaintiff must allege

something more than a generalized emotional or reputational harm to establish an adverse action

at the pleading stage. *Id.* Plaintiff fails to allege an actionable adverse action here for at least three independent reasons.

*First*, Kienbaum and Beekman's statements are themselves protected by the First Amendment. This is illustrated by *Mezibov v. Allen*. 411 F.3d at 722. The plaintiff in *Mezibov* was a criminal defense attorney who filed motions during a criminal trial accusing the prosecutor of misconduct. *Id.* at 715. The prosecutor issued a press release and sat for a television interview in which he accused the criminal defense attorney of being a bad lawyer, mishandling the case, and being more interested in publicity than serving his client. *Id.* at 715-16. In rejecting the defense attorneys First Amendment claim, the Sixth Circuit held that "it would be inconsistent with core First Amendment principles and basic notions of fairness" to prevent governmental officials to making public statements in response to accusations made in court filings. *Id.* at 722. Thus, to the extent these comments are not defamatory, the prosecutor had a First Amendment right to make them. *Id.* The court also held that, even if the comments were defamatory, the plaintiff's generalized allegations of reputational harm were insufficient to plead a viable First Amendment claim. *Id.* at 722.

Here, Plaintiff and his attorneys used the platform of the Western District Litigation to make incendiary, false, and entirely irrelevant statements about Dantonio to the press. (Exhibit B, at 6, 7.) Responding to the press inquiries which Blackwell intended to and did trigger, Beekman and Kienbaum simply denied Blackwell's allegations. Courts addressing this type of public statement in the defamation context have held that such statements are a routine feature of litigation and constitute non-actionable opinion. *Davis v Covenant Presbyterian Church of Nashville*, 2015 WL 5766685, at *4 (Tenn Ct App, Sept 30, 2015) (claim that lawsuit makes "a number of serious, but false allegations" is non-actionable opinion akin to his "deny[ing] them in

9

an answer filed in court"); *GetFugu, Inc v Patton Boggs LLP*, 220 Cal App 4th 141, 156 (2013)

("statements regarding the merits of litigation are 'nothing more than the predictable opinion of

one side to the lawsuit and cannot be the basis for a defamation claim"); *Alzheimer's Found of*

*Am, Inc v Alzheimer's Disease & Related Disorders Ass'n, Inc*, 796 F Supp 2d 458, 471 (SDNY,

2011) (a statement condemning an opponent's legal claims as 'baseless'" is not actionable)

(citing cases); *Porter v Saar*, 260 AD2d 165, 167 (NY App Div 1999) (holding that a "general

denial of plaintiff's… accusations of misconduct" not actionable); *Jacobs v The Oath for*

*Louisiana, Inc*, 221 So 3d 241, 247–48 (La App 2017) (even claims that a lawsuit is "frivolous,

baseless, and absurd" are "of the type commonly made in the context of litigation between

parties on opposite sides of a controversy" and are not actionable defamation); *Camer v Seattle*

*Post-Intelligencer*, 45 Wash App 29, 40–41 (1986) (attack on plaintiff's "suits as frivolous and

nuisances" is not actionable).

      Kienbaum also pointed out that it was Blackwell's own conduct during his suspension

that exposed MSU to NCAA violations. Because this statement is true (Blackwell does not deny

that he engaged in the conduct Kienbaum described, as he cannot), it cannot be defamation and is

also protected by the First Amendment.

      *Second,* even setting aside the First Amendment, neither Beekman nor Kienbaum's

statements disclosed the sort of confidential, intimate or personal information that would deter a

person of ordinary firmness from exercising their constitutional rights. *Wurzelbacher*, 675 F.3d

at 584–85 (citing the public disclosure of confidential and "humiliating details" of a rape as the

type of unusual circumstance where retaliatory speech could deter protected activity). In *Fritz v.*

*Charter Twp. of Comstock*, for example, the Sixth Circuit held that allegedly false accusations

that the plaintiff violated village ordinances, even if defamatory under state law, did not concern

the type of embarrassing or sensitive information that would constitute an adverse action under the First Amendment. 592 F.3d 718, 727 (6th Cir. 2010). The statements of Kienbaum and Beekman, to the extent they reference Blackwell at all, did so in the context of claimed NCAA violations. These statements are no more embarrassing or personal than the accusation of village ordinance violations in *Fritz* and therefore are not, as a matter of law, adverse actions.

Third, even if all this were not true, Blackwell has only alleged generalized reputational harm. (Amend. Compl. at ¶ 206, 235.) This is insufficient to state a First Amendment retaliation claim. *Wurzelbacher*, 675 F.3d at 584-85. The closest he comes is alleging that he has not been able to find a comparable college football job. (Amend. Compl. at ¶ 235.) While these allegations are conclusory and unsupported by any facts, they also do not connect the harm to the purported retaliatory conduct. Plaintiff is careful to allege that "statements like these"—not these actual statements—caused the harm. (*Id.*) He avoids making a direct connection because, since 2018, he's been claiming in the Western District Litigation that his inability to find a comparable job was caused by the non-renewal of contract. (See, e.g., Exhibit A, at p.14 (seeking future lost wages as damages); *see also* Blackwell Interrogatory Response No. 4, **Exhibit H**, (stating in 2019 that he has not been able to find comparable employment since his termination).) While that's not true either, he cannot, in good faith, claim that his inability to find a comparable job since 2018 was caused by statements made in 2020.

Finally, Plaintiff also vaguely alleges that Dantonio retaliated against him by seeking discovery in the Western District Litigation. This is a non-starter. Government defendants, like all defendants, are entitled to seek discovery in accordance with the Federal Rules of Procedure. To the extent any litigant believes that discovery requests are improper, the Rules provide a resolution process. Accordingly, the threat of discovery should not deter any reasonable person

of ordinary firmness from bringing a meritorious lawsuit, and seeking discovery cannot be an adverse action under the First Amendment. A contrary ruling would abridge the due process rights of government defendants.[5]

**B. Dantonio was not a state actor when defending himself in the Western District Litigation.**

Setting aside that there has been no underlying constitutional tort, the claims against Dantonio must be dismissed for an additional, fundamental reason: he is not a state actor when defending himself in litigation.

Section 1983 only applies to state actors. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). A public employee is not a state actor for purposes of § 1983 liability when acting in furtherance of his or her personal pursuits. *Waters v. City of Morristown*, TN, 242 F.3d 353, 359 (6th Cir. 2001). Unless the employee engaged in actionable conduct in the course of his or her professional duties or the conduct was made possible because of his or her public employment, it is not state action for purposes of § 1983. *Id.*

Here, all of the allegations concerning Dantonio relate to his defense of the Western District Litigation. Dantonio was being sued in his individual capacity in that case, faced the possibility personal liability, and therefore, to the extent he authorized actions in defense of that litigation did so in his personal capacity. If Dantonio had not been employed by MSU at the time

---

[5] Plaintiff alleges that Kienbaum "used information" obtained in the Western District Litigation in making his January 30 statement, but does not allege what "information" was obtained or how it was used. This is another example of Plaintiff's bad-faith pleading. As Plaintiff knows, his attempt to sell his camp to other colleges was known to MSU, reported to the NCAA, and resulted in sanctions, all in 2017, long before he filed his suit. Because Plaintiff cannot directly allege that Kienbaum's statement included information obtained through litigation, Plaintiff makes an opaque allegation hoping the Court will draw an inference that he knows is false. In any event, how the information was obtained is immaterial because the statement is not actionable for the reasons stated above.

the suit was filed his exposure to liability would have been the same as would have been his ability to defend himself as he did. *Waters v. City of Morristown*, TN, 242 F.3d 353, 359 (6th Cir. 2001) ("a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law".) Blackwell does not allege any facts plausibly establishing that Dantonio retaliated against Blackwell in his capacity as a football coach or that his position as a state employee made the claimed retaliation possible. Indeed, Blackwell does not allege Dantonio engaged in any actionable conduct at all but, rather, seeks to hold him liable, through agency principles, for the conduct of the attorney defending Dantonio (not MSU) in the Western District Litigation. To the extent Kienbaum's conduct can be imputed to Dantonio (a point Dantonio is not challenging), it is in his personal capacity as a defendant in litigation, not as a state employee.

### C.  There was no conspiracy between Beekman, Dantonio, and Kienbaum.[6]

In Kienbaum's first motion to dismiss, he pointed out that neither he nor Dantonio are state actors for purposes of Blackwell's First Amendment claim. (Docket Entry No. 3, PageID 67.) In response, Blackwell and Paterson made up a story that Beekman was somehow involved in Kienbaum's January 30 statement, that Dantonio and Kienbaum were somehow involved in Beekman's February 4 statement, and that both statements are part of a conspiracy against Blackwell. (See, e.g., Amend. Compl. at ¶ 200, 242-44.) Blackwell and Paterson's capacity to make these allegations without any even arguably good-faith basis for doing so is hair-raising,

---

[6] Rule 56 of the Federal Rules of Civil Procedure permits a defending party "at any time, [to] move with or without supporting affidavits for a summary judgment in the party's favor." Fed. R. Civ. P. 56(b) (emphasis added). Thus, by its own terms, Rule 56 allows motions for summary judgment before discovery. *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 280 (6th Cir. 2005). Here, discovery would not have any bearing on the uncontested material facts and Plaintiff has no good faith basis to suggest that it would.

but, unfortunately, not at all surprising at this point. In any event, the attached sworn affidavit of William Beekman establishes that he has never spoken or communicated in any way with Kienbaum. (Exhibit G, at ¶¶ 3, 4.) He had no involvement or advance notice of Kienbaum's January 30 statement and, aside from being subpoenaed as a witness, has had no involvement in the Western District Litigation at all. (*Id.* at ¶¶ 5, 6.) The statement he made at the February 4 press conference was a truthful response to a press inquiry. (*Id.* at ¶¶ 7-10.) He was not encouraged to make that statement by either Dantonio or Kienbaum. (*Id.*) Blackwell cannot establish a conspiracy between Beekman, Dantonio, and Kienbaum because there was none, and he has no good faith basis to suggest otherwise. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (dismissing conspiracy claim where there is no evidence that parties were not acting independently).

## D. Even if Plaintiff had pled a viable § 1983 claim, Dantonio and Beekman would be entitled to qualified immunity.

Plaintiff's First Amendment retaliation claims fails for many reasons, but even if he had pled a viable claim, and Dantonio was a state actor for purposes of that claim, both Dantonio and Beekman would be entitled to qualified immunity. Qualified immunity protects governmental officials from standing trial where their discretionary actions do not violate clearly established rights. *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 626 (6th Cir. 2019). The bar for establishing whether a right is clearly established is high. It "requires a high degree of specificity. Courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the official's conduct does not follow immediately from the conclusion that the rule was firmly established." *Id.* (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018).)

Here, the available law, at a minimum, strongly suggests that the Kienbaum and Beekman's statements are themselves protected speech and cannot be adverse actions for purpose of a First Amendment retaliation claim. See *Mezibov*, 411 F.3d 712, 721–22; *Wurzelbache*, 675 F.3d at 584–85. In light of this precedent, a contrary rule would not have been clearly established at the time the statements were made and Dantonio and Beekman would be entitled to qualified immunity.

### E.  Paterson and Blackwell should be sanctioned.

This Court has "the inherent power to assess attorney's fees against counsel who willfully abuse judicial processes or who otherwise act in bad faith." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). This Court has a similar authority under 28 U.S.C. § 1927, which authorizes "costs, expenses, and attorneys' fees" against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." Section 1927 does not require a showing of bad faith; an attorney need only "knowingly disregard[ ] the risk that his actions will needlessly multiply proceedings." *Red Carpet*, 465 F.3d at 646 (stating that "§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence").

The history preceding this lawsuit and Blackwell and Paterson's conduct in the short time since this lawsuit has been filed are glaring examples of bad-faith litigation misconduct. That they engaged in a pattern of harassment and litigation misconduct in the Western District Litigation is a matter of public record. In this case, they have filed a 50-page complaint shot through with salacious allegations that have nothing to do with the causes of action actually pled. They never bothered to serve Dantonio and other defendants suggesting that the point of the filing, in accordance with their past practice, is not to obtain a judicial remedy but to make a public splash

with the filing. And when faced with the prospect of the collapse of their lawsuit under the state actor doctrine, they made up false facts to clear that pleading hurdle. It's difficult to imagine more glaring examples of bad faith. If there were any doubt, a glance at Paterson's history of sanctions removes it. He is famous for bad-faith litigation abuses. *Davis v. Johnson*, 664 F. App'x 446, 450 (6th Cir. 2016) (Paterson has a "prolific history" of presenting "repetitive, vexatious, and frivolous" filings); *Carmack v. City of Detroit*, No. 18-cv-11018, 2019 WL 4670363, at *8 (E.D. Mich. Sept. 25, 2019) (Leitman, J.) (Paterson's history of bad faith litigation is why "so many federal and state courts have sanctioned him"). Paterson and Blackwell's continued abuse of the judicial system is causing serious harm and despite serious sanctions already being issued, continues unabated. The Court should sanction them again here.

Dated: September 16, 2020

_____
Uri Abt (P84350), Assistant General Counsel
Michigan State University
Office of General Counsel
Attorneys for Mark Dantonio and William Beekman

16