UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Curtis Blackwell, II,

      Plaintiff,

v.                                  Case No. 20-11493

Jones Day Law Firm, *et al.*,         Sean F. Cox
                                 United States District Court Judge

      Plaintiffs.

_____/

## OPINION & ORDER

Plaintiff filed this action on June 6, 2020.  The matter is currently before the Court on the following motions: 1) "Defendant Kienbaum's Motion To Dismiss The Amended Complaint Or Alternatively For Summary Judgment, And For Sanctions" (ECF No. 10); 2) A "Joint Motion To Dismiss By Jones Day And Louis P. Gabel" (ECF No. 11); 3) "Defendants Mark Dantonio And Williams Beekman's Motion To Dismiss, For Judgment As A Matter Of Law, And For Sanctions" (ECF No. 25); 4) "Plaintiff's Amended Emergency Motion For Leave To File Second-Amended Complaint" (ECF No. 31); and 5) Plaintiff's "Motion for the Court To Dismiss Counts III and IV Against Defendants Dantonio and Beekman." (ECF No. 50).  The Court concludes that oral argument is not necessary and shall decide the motions without a hearing.  For the reasons set forth below, the Court shall: 1) deny Plaintiff's motion seeking leave to file a Second Amended Complaint on both undue delay and futility grounds; 2) Strike Plaintiff's improper Notices of Voluntary Dismiss and deny Plaintiff's Motion seeking to dismiss the claims against Dantonio and Beekman without prejudice; 3) grant Defendant Dantonio and Beekman's unopposed motion, to the extent that the Court rules that they are

1

entitled to qualified immunity as to the claims asserted against them; 4) grant the motion filed by Jones Day and Gabel, to the extent that to the extent that the Court rules that they are entitled to qualified immunity as to the claims asserted against them; and 5) grant Defendant Kienbaum's motion, to the extent that all claims against him are dismissed with prejudice.

## BACKGROUND

This case is now the third case that Plaintiff Curtis Blackwell ("Plaintiff" or "Blackwell") has filed against Defendant Mark Dantonio and other officials from Michigan State University ("MSU"). One of those actions was filed in state court (Wayne County Circuit Court Case No. 20-003672-CD) and the other two are federal cases.

### The Western District Case

On November 12, 2018, Blackwell filed suit against Mark Dantonio, in his individual capacity as Head Football Coach of MSU, and along with four other MSU-affiliated Defendants (Lou Anna K. Simon, its then President; Mark Hollis, Director of Intercollegiate Athletics; and Detectives Chad Davis, and Sam Miller, detectives with the MSU Police Department). Blackwell filed that suit, styled Case Number 18-01261 and assigned to the Honorable Janet Neff, in the United States District Court for the Western District of Michigan (hereinafter, "the Western District Case").

Blackwell's complaint in the Western District Case alleged two claims under § 1983 Complaint, alleging violations of his Fourth and Fifth Amendment rights arising out of his arrest on February 8, 2017. Blackwell alleged that Defendants Davis and Miller arrested him without probable cause, in violation of his Fourth Amendment rights (Count I) and that Defendants Simon, Dantonio, and Hollis violated his Fifth Amendment rights by declining to renew his

2

employment agreement in retaliation for his exercise of his right to remain silent and to decline
to be questioned by the MSU Police Department or MSU's investigators (Count II).

Attorney Thomas Kienbaum represented Defendant Dantonio in the Western District
Case.

While the Western District Case was filed on behalf of Blackwell by another attorney,
Attorney Andrew Paterson, Jr. added his appearance on Blackwell's behalf in September of
2019.

On May 20, 2020, Judge Neff ruled that Blackwell's counsel violated Fed. R. Civ. P. 11
by engaging in harassing conduct against Defendants, in violation of court orders. (*See* ECF No.
10-3 (magistrate judge's Report & Recommendation) and 10-4 (Judge Neff's Opinion & Order
adopting it and ordering sanctions). Among other things, Paterson was found to have
intentionally included scandal-invoking statements in his filings, referencing possible NCAA
violations that had no relevance to the case, and were designed to harass Dantonio and generate
media coverage.

Judge Neff ultimately dismissed the Fifth Amendment claims against Defendants Simon,
Dantonio, and Hollis with prejudice. She also sanctioned Blackwell's lawyers (Warnicke and
Paterson) by imposing an award of monetary sanctions (more than $50,000.00), ordered them
removed from that case, and referred Paterson to the Chief Judge of the United States District
Court for the Western District of Michigan (Chief Judge Robert J. Jonker) for discipline.

Chief Judge Jonker concluded that the sanctions imposed against Paterson by Judge Neff
were appropriate and necessary to address his misconduct but declined to impose further
sanctions such as suspension or disbarment from that Court. (*See* 7/30/20 Administrative

Order).

**This Second Federal Case**

On June 6, 2020, acting through counsel, Andrew Paterson, Plaintiff filed this second federal case.

Plaintiff's original complaint included claims against attorney Thomas Kienbaum.  On June 29, 2020, Kienbaum filed a "Motion To Remove Plaintiff's Counsel, To Dismiss, And For Sanctions."  (ECF No. 3).

On July 20, 2020, Plaintiff filed an Amended Complaint as of right, which is now the operative complaint in this case.  Plaintiff's Amended Complaint names the following Defendants: 1) the Jones Day Law Firm; 2) Mark Dantonio; 3) Louis P. Gabel; 4) Thomas Kienbaum; and 5) Bill Beekman.

Plaintiff's Amended Complaint includes the following claims: 1) "Plaintiff's As-Applied Challenge to MSU's RVSM Policy Cited in Defendants Jones Day and Gabel's June 2017 Written Report Violated Plaintiff's First Amendment Rights" (Count I); 2) "First Amendment Retaliation Claim Against Defendants Jones Day and Gabel" (Count II); 3) "First Amendment Retaliation Claim Against Defendants Kienbaum, Dantonio, and Beekman For False and Damaging Statements Made To Mlive" (Count III); and 4) "First Amendment Retaliation Claim Against Defendants Beekman, Dantonio and Kienbaum For Publicly Accusing Plaintiff of Lying About MSU Athletic Department's and Defendant Dantonio's Apparent NCAA Violations" (Count IV).

On August 3, 2020, Defendant Kienbaum filed a "Motion To Dismiss The Amended Complaint Or Alternatively For Summary Judgment And Sanctions," (ECF No. 10).  That

motion replaced his prior motion (ECF No. 3), so the prior motion is denied as moot.

On September 13, 2020, Plaintiff filed a motion asking the Court to strike Defendant Kienbaum's June 29th Motion.  That motion (ECF No. 21) shall be denied as moot since that motion was replaced by Kienbaum's August 3rd motion.

On August 13, 2020, a "Joint Motion To Dismiss By Jones Day And Louis P. Gabel" (ECF No. 11) was filed.

On September 16, 2020, "Defendants Mark Dantonio And Williams Beekman's Motion To Dismiss, For Judgment As A Matter Of Law, And For Sanctions" (ECF No. 25) was filed.

On October 14, 2020, *after all of the Defendants had filed their dispositive motions challenging Plaintiff's Amended Complaint*, Plaintiff filed an "Emergency Motion For Leave To File Second-Amended Complaint" (ECF No. 31), along with a "Motion To Expedite Briefing, Scheduling, And Adjudication Of Plaintiff's Amended Emergency Motion For Leave To File Second-Amended Complaint."  (ECF No. 33).  The only "emergency" cited by Plaintiff was that Plaintiff and his counsel wanted expedited briefing and an expedited ruling on that motion.  This Court denied the motion for expedited briefing and ruling via text-only order.

Plaintiff's proposed Second Amended Complaint would be Plaintiff's now third complaint in this action.  In it, Plaintiff seeks to add two new counts against Defendants Jones Day and Gabel.  He would also add some factual allegations:

1) allegations that Defendants Dantonio and Beekman acted in their official capacities as "head football coach" at MSU and as "the Athletic Director" for MSU (*see, e.g.*, paragraphs 188 & 190 of and 221 & 223 of proposed Sec. Am. Compl.); and

2) allegations that Kienbaum "conspired with" Defendants Dantonio and Beekman while those two men were acting in their official capacities (*Id*. at 201 & 292);

5

*(See* ECF No. 37-2, "red-line" comparison provided by Def.).

Plaintiff's proposed Second Amended Complaint would also add allegations as to the existence of an alleged NCAA investigation into Dantonio and MSU and an alleged interview with Plaintiff scheduled for November of 2020.  (*Id*. at ¶¶ 246-255).

### Summary Of Plaintiff's Claims

Plaintiff's proposed Second Amended Complaint is now the *third version* of the complaint that Mr. Paterson has drafted.

In all three versions of the complaints, Plaintiff purports to "incorporate by reference" (ie, not include the actual allegations and reference them only by referring to other documents) paragraphs from *filings in another case*.  Rather than include the actual allegations he wishes to include in his pleadings in this case, Plaintiff purports to "incorporate by reference" numerous paragraphs of a complaint that he filed in the Western District Case – a complaint in another case, filed in another district.  Worse yet, Plaintiff purports to "incorporate by reference" "all allegations set forth" in a "motion for leave to file a first-amended complaint that was filed [by Plaintiff] ***under seal*** in the Western District" Case.  (ECF No. 31-1 at 98-99) (emphasis added) (*see also* ECF No. 1 at 17 and ECF No. 6 at 17).  While it does not appear that these missing allegations are relevant to the claims in this case, this conduct illustrates the way Mr. Paterson has proceeded in this case.  A party cannot incorporate by reference allegations from a pleading filed in another case, in another district, without re-stating the allegations at issue.  That is especially so given that he is referencing a *sealed* filing in another court.

### The Parties

As to the parties, Plaintiff identifies them as follows.  Defendant Bill Beekman

("Beekman") "is the Athletic Director" for MSU.  (Pl.'s proposed Second Amended Complaint ("SAC") at ¶ 11).  Defendant Mark Dantonio ("Dantonio") "is the former MSU Head Football Coach," and served as such "for 13 years from 2007 through February 2020."  (*Id*. at ¶ 8) .

While he was MSU's Head Coach, Dantonio hired Plaintiff Blackwell as a member of his MSU football staff.  Plaintiff was hired in 2013 as "Director of College Advancement and Performance/Camp Director" and had an employment contract that was "renewable from year-to-year at Defendant Dantonio's discretion."  (*Id*. at ¶¶ 48-49).  Plaintiff is also "co-founder and President of Sound Mind Sound Body Foundation" ("SMSB"), a "Michigan nonprofit corporation based in Wayne County, Michigan."  (*Id*. at ¶ 7).

The National Collegiate Athletic Association ("NCAA") "governs inter-collegiate sports competition between colleges and its rules govern the competitions in collegiate sports, including football."  (*Id*. at ¶ 58).

"Defendant, Jones Day Law Firm" ("Jones Day") is a law firm that "was retained by" MSU "to perform an investigation of the MSU football program's institutional response to allegations of sexual assault in connection with incidents that occurred in January 2017 involving three MSU football players and in connection with the April 2017 sexual assault" involving a former MSU player.  (*Id*. at ¶ 7).  Defendant Louis P. Gabel ("Gabel") "was one of two lawyers who performed the investigation of the MSU football program's institutional response for Defendant Jones Day."  (*Id*. at ¶ 9).

Defendant Thomas Kienbaum "(Kienbaum") is "a lawyer that was retained as outside counsel to represent" Dantonio in the Western District Case.  (*Id*. at ¶ 10).

**General Factual Allegations**

7

"MSU's RVSM policy mandates and requires an employee to report any alleged sexual assault to the MSU Police Department and the OIE."  (SAC at ¶ 309).  That policy "makes it mandatory for an employee with knowledge of an alleged sexual [assault] to report information known to them to the MSU Police Department and the OIE."  (*Id*. at ¶ 310).  As "an employee of MSU," Plaintiff "was a mandatory reporter under the RVSM Policy."  (*Id*. at ¶ 155).  The same is true of Dantonio.

"On January 15, 2017, an alleged sexual assault involving three MSU football players occurred at an off-campus party."  (*Id*. at ¶ 97).

"On February 8, 2017, Plaintiff was arrested by MSU Detectives Chad Davis" and Sam Miller.  (*Id*. at ¶ 100).

After Plaintiff's release from custody, Plaintiff "returned to the MSU football building" and "immediately informed Defendant Dantonio of his arrest and detention."  (*Id*. at ¶ 101 & 102).

On February 9, 2017, Dantonio advised Plaintiff, via email, that he was "suspended and placed on paid administrative leave."  (*Id*. at ¶ 103).  "Attached to Defendant Dantonio's email was a memo from Hollis informing Plaintiff that he was to have no further contact with the football program or any of its players pending the outcome of an investigation."  (*Id*. at ¶ 104).

On February 8, 2017, MSU engaged Defendants Jones Day and Gabel to conduct an external investigation of the football program and of the January 2017 alleged sexual assault incident involving three MSU football players at an off-campus party."  (*Id*. at ¶ 108).

Plaintiff invoked his Fifth Amendment right not to participate in interrogations by the MSU Police Department.  (*Id*. at ¶ 109).

8

Plaintiff also declined to be interviewed by Jones Day and Gabel about the January 15, 2017 alleged sexual assault incident with three MSU football players.  (*Id*. at ¶ 110).

Plaintiff's invocation of his rights, with respect to declining the "MSU Police and Jones Day interviews, appeared to displease MSU officials," including Dantonio.  (*Id*. at ¶ 111).

The Jones Day Report was provided to officials at MSU.  Plaintiff alleges that "MSU officials publicly released" the Jones Day Report in June of 2017.  (*Id*. at ¶ 271).  Plaintiff learned about the public release of the Jones Day Report on June 6, 2017, and obtained a copy that same day.  (*Id*. at ¶¶ 272-273).

### Count I

Count I is titled, "As-Applied Challenge to MSU's RVSM Policy Cited in Defendants Jones Day and Gabel's June 2017 Written Report Violated Plaintiff's First Amendment Rights." That claim is "brought against Defendants Jones Day and Gabel" under 42 U.S.C. § 1983.[1]  In this count, Plaintiff asserts that the "MSU RVSM Policy, as applied to [him], violated Plaintiff's First Amendment right not to speak."  (*Id*. at ¶ 150).

Plaintiff states that "as an employee of MSU," he "was a mandatory reporter under the RVSM Policy."  (*Id*. at ¶ 155).  He alleges that "[b]y not reporting the alleged sexual assault to the OIE and MSU Police Department, Plaintiff, as a citizen, exercised his First Amendment right not to speak.  Plaintiff was speaking as a citizen and not as an employee when he chose not to report and/or speak with officials from the OIE and MSU Police Department about the alleged sexual assault involving three MSU football players on January 15, 2017." (*Id*. at ¶ 152 & 153).

---

[1]There were no exhibits attached to any of Plaintiff's complaints.  Thus, a copy of MSU's RVSM Policy (assuming it is a written policy) and the June 2017 Report are not exhibits to the complaints.

Plaintiff alleges that the Jones Day/Gabel "June 2017 written report" "falsely concluded that Plaintiff violated MSU's" RVSM Policy by: 1) "allegedly conducting his own investigation in to the alleged sexual assault; and 2) "by not reporting the alleged sexual assault to MSU's OIE and to the MSU Police Department." (*Id.* at ¶¶ 144-48).  He alleges that MSU's "RVSM Policy, as applied to the Plaintiff by the Defendants Jones Day and Gabel, is unconstitutional because the MSU RVSM Policy violated Plaintiff's First Amendment right not to speak."  (*Id.* at ¶ 156).

### Count II

In this count, Plaintiff alleges that "[a]s a result of Plaintiff exercising his First Amendment right not to speak with Defendants Jones Day and Gable, Defendants Jones Day and Gabel retaliated against the Plaintiff by publishing in their June 2017 written report information that was damaging to Plaintiff's reputation and good name." (SAC at ¶174).  He alleges that his "exercising his right not to speak was a substantial or motivating factor in Defendants Jones Day and Gable electing to publish in their June 2017 written report information that was damaging to Plaintiff's reputation and good name."  (*Id.* at ¶ 175).  Plaintiff alleges that the "adverse action Defendants Jones Day and Gable took by publishing certain information in their June 2017 written report was deliberate and intentional to besmirch Plaintiff's good name and reputation." (*Id.* at ¶ 181).  Plaintiff seeks money damages as well as a "declaration that Defendants Jones Day and Gabel retaliated against Plaintiff for exercising his First Amendment right not to speak by publicizing information that was damaging to Plaintiff's good name and reputation."  (*Id.* at 39).

### Count III

In Count III, Plaintiff asserts a First Amendment Retaliation Claim against Defendants

Kienbaum, Dantonio and Beekman "For False And Damaging Statements Made To Mlive."  In

this count, Plaintiff alleges that, during the Western District Case, he made various public

statements about Dantonio, the MSU Athletic Department, and the MSU football program.  He

claims that conduct, along with the Western District Case he filed, upset Kienbaum, Dantonio,

and Beekman.  Plaintiff alleges that his protected conduct (speaking negatively about Dantonio

and MSU's athletic department and "his filing of his first federal lawsuit") caused Defendants

Kienbaum, Dantonio, and Beekman "to retaliate against Plaintiff by seeking out potentially

damaging information about the Plaintiff and having that damaging information published by

media publications."  (SAC at ¶ 199).  Blackwell alleges that:

> 203.    In a January 30, 2020 article, Mlive quoted Defendant Kienbaum as
>         stating the following:
>
>> 'Any assertion that there was a NCAA violation at any time, other
>> than Mr. Blackwell's, which is a matter of record, let alone
>> disclosed by this deposition, is false . . . In fairness, if Blackwell
>> wants to talk about NCAA violations,' Kienbaum said, 'the only
>> one that we're familiar with in this context is the one that he
>> caused. . . . It was Curtis Blackwell's action in trying to peddle his
>> camp to Rutgers and Maryland at a time when he was still on the
>> payroll of Michigan State.'"

(SAC at ¶ 203).  Plaintiff alleges those comments were "made with the approval and at the

request of his client, Defendant Dantonio, and at the request of Defendant Beekman, were

damaging to Plaintiff's good name and reputation and were false."  (*Id*. at ¶ 203).  He alleges the

comments made by Kienbaum were "made during a personal one-on-one interview Defendant

Kienbaum had with a reporter from Mlive" and were not "made in the courtroom nor during any

court proceedings."  (*Id*. at ¶ 205-06).  Plaintiff alleges that Kienbaum, Dantonio and Beekman

took the "adverse action of having false and damaging information printed and disseminated

about the Plaintiff in retaliation for Plaintiff filing his first federal lawsuit" (the Western District Case) and for Plaintiff speaking negatively to the press about Dantonio and MSU's Athletic Department. Plaintiff alleges that "[s]tatements like Defendant Kienbaum's in the January 30, 2020 Mlive article have severely hampered Plaintiff's ability to get a similar job with another university's football program." (*Id*. at ¶ 210).

<b>Count IV</b>

In Count IV, Plaintiff asserts another First Amendment retaliation claim against Defendants Kienbaum, Dantonio, and Beekman. This claim is based on the same alleged protected conduct by Plaintiff (speaking negatively about Dantonio and MSU's Athletic Department and having filed the Western District Case). In this count, Plaintiff claims these Defendants retaliated against him by conspiring and causing "false statements to be made to the Detroit Free Press and Detroit News falsely accusing the Plaintiff of lying about" Dantonio and MSU's Athletic Department's "committing multiple NCAA violations when they were recruiting certain star athletes." (SAC at ¶ 233). Plaintiff alleges that, during a February 2, 2020 "press conference, Defendant Beekman, in his capacity as MSU's Athletic Director falsely stated that Plaintiff's allegations of apparent NCAA violations committed by Defendant Dantonio and the MSU Athletic Department were 'patently false.'" (*Id*. at ¶ 236). He alleges that "Beekman's false statements about the Plaintiff were published by the Detroit Free Press in a February 4, 2020 article." (*Id*. at ¶ 237). Plaintiff further alleges:

239. At the February 4, 2020 press conference, Defendant Beekman also besmirched Plaintiff's character and questioned Plaintiff's credibility.
240. The disparaging comments Defendant Beekman made about the Plaintiff at the February 4, 2020 press conference seemed to suggest and imply that Plaintiff was a "liar" and "unethical."
241. These comments made by Defendant Beekman, which were made at the

12

request for Defendant Dantonio and Defendant Kienbaum, were damaging to the Plaintiff's good name and reputation and were false.

(SAC at ¶ 239-41).

### Count V

In Count V, Plaintiff seeks to assert an equal protection claim against Jones Day and Gabel under a "class-of-one" theory.  Plaintiff alleges that the Jones Day Report "falsely concluded that Plaintiff violated MSU's" RVSM Policy by allegedly conducting his own investigation and by failing "not reporting the alleged sexual assault" to MSU.  (SAC at ¶ 275-279).  Plaintiff alleges that "[n]otably absent from" the Jones Day Report "was any summary detailing the fact that Defendant Dantonio did not personally report the alleged sexual assaults" and that the alleged sexual assaults "were reported to the MSU Police Department and to MSU's OIE by proxy on Defendant Dantonio's behalf."  (*Id*. at ¶¶ 280-281).  He alleges that Jones Day and Gabel "included defamatory conclusions about the Plaintiff" in the Jones Day Report because of the "personal animus and dislike" that Jones Day and Gabel "have against the Plaintiff" due to his having refused their requests to be interviewed.  (*Id*. at ¶¶ 283-84).  Plaintiff alleges that "Jones Day and Gabel treated Plaintiff differently" than Dantonio "by failing to include" in the Jones Day Report "the fact that Defendant Dantonio did not personally report the alleged sexual assaults" to MSU.  (*Id*. at ¶ 287).

### Count VI

In Count VI, Plaintiff alleges that "MSU's RVSM policy, as applied to the Plaintiff by the Defendants Jones Day and Gabel, violated Plaintiff's Fifth Amendment right to remain silent and Plaintiff's Fifth Amendment right not be compelled to answer self-incriminating questions." (SAC at 75).  Plaintiff alleges that MSU's RVSM Policy, as applied to him, violated Plaintiff's

Fifth Amendment right against self-incrimination.

### The Jones Day Report

Defendants Jones Day and Gabel submitted the Jones Day 2017 report, that was referenced throughout Plaintiff's complaint, as an exhibit to their Motion to Dismiss.  (ECF No. 11-2).  The Court shall refer to that report as the "Jones Day Report."

Notably, the Jones Day Report does not identify Blackwell, either by name, or by job title, anywhere in the thirteen-page written report.  Rather, it makes reference to an unnamed "member of the football staff," who "declined to be interviewed" and "declined to participate in Jones Day's investigation."  (*Id.* at 3 & 9).  The Jones Day Report states that while they were "unable to assess what information was reported to or uncovered by that staff member regarding the January 2017 incident, as well as what actions that staff member took in response," "[t]here is evidence" that the unidentified "staff member violated MSU's RVSM policy," though they were "unable to gauge the severity of any such violation."  (*Id.* at 3).

### STANDARD OF DECISION

Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true.  *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Legal conclusions couched as factual allegations will not suffice.  *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011).  Rather,

"[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Here, Plaintiff's complaints have referred to "Jones Day and Gabel's June 2017 written report," (*see, eg.*, Pl.'s prosed Sec. Am. Compl. at ¶ 148) and that report is central to his claims. As such, the Court may consider that written report (attached as Exhibit 1 to the Jones Day/Gabel Defs.' Motion) when analyzing whether Plaintiff has stated a claim upon which relief may be granted.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and provides, in pertinent part that:

> (a) Motion for Summary Judgment or Partial Summary Judgment.  A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought**.**  The court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.   The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

## ANALYSIS

In the motions filed by Defendants, they seek dismissal and/or summary judgment as to all of the claims asserted against them.  Defendants Kienbaum, Dantonio, and Beekman also ask the Court to impose sanctions.

After all of the Defendants had filed their dispositive motions, Plaintiff filed a motion seeking leave to file a Second Amended Complaint.

## I.    The Court Denies Plaintiff's Motion For Leave To File A Second Amended Complaint.

Rule 15 of the Federal Rules of Civil Procedure governs the filing of amended complaints and provides that, at this stage of the litigation, Plaintiff may amend his complaint only with the opposing party's written consent or this Court's leave.  FED. R. CIV. P. 15(a). Plaintiff does not have the consent of Defendants to amend his complaint, so he must obtain leave of this Court in order to file his proposed Second Amended Complaint.

The decision as to whether justice requires the amendment is committed to the district court's sound discretion.  *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971).  Abuse of that discretion occurs when a district court fails to state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Reasons that warrant denying a motion for leave to amend include "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment."  *Id.* at 182.

16

A.     **Undue Delay**

Again, this is Plaintiff's third lawsuit against Defendant Dantonio and others that relates to the same subject matter and events.

Plaintiff filed this action on June 6, 2020.  After Defendant Kienbaum filed a Motion to Dismiss on June 29, 2020, Plaintiff filed a First Amended Complaint as of right on July 20, 2020.

After that, Kienbaum filed a renewed Motion to Dismiss, and the other Defendants also filed dispositive motions challenging Plaintiff's First Amended Complaint.

Plaintiff waited until after all of those motions had been filed before he sought leave to file his proposed Second Amended Complaint that would add new counts.  And Plaintiff was well aware of the alleged factual basis of those new claims (ie, claims based upon the 2017 Jones Day Report and MSU's RVSM Policy) back in 2017, before this third lawsuit was ever filed. Plaintiff has offered no credible explanation as to why these additional claims and allegations could not have been included in his original Complaint or his First Amended Complaint.

In addition, Defendants note that some of the additional factual allegations that Plaintiff seeks to add (ie, allegations as to the existence of an alleged NCAA investigation into Dantonio and MSU and an alleged interview with Plaintiff scheduled for November of 2020) appear to have no relevance to the claims asserted in this case.  Thus, despite being sanctioned in the Western District Case, it appears that Blackwell and Paterson are again seeking "to inject salacious and irrelevant material" into Plaintiff's filings.

As such, Defendants oppose Plaintiff's motion to amend on the ground that Plaintiff has acted in bad faith and on the ground that Plaintiff unduly delayed moving to amend, to the

17

prejudice of Defendants.  (*See* Defs. Dantonio & Beekman's Br. in opposition to Motion to

Amend at 3-4; Def. Kienbaum's Br. at 3-4).

Defendants contend that undue delay "exists when, as here, the plaintiff had all of the

facts needed to assert the proposed new claims, but waited to do so until after briefing has taken

place."  (Defs.' Jones Day & Gabel's Br. at 3) (citing *Wallace Sales & Consulting, LLC v. Tuopu*

*N. Am. Ltd.,* 2016 WL 6875889 (E.D. Mich. Nov. 22, 2016)).

In the case of Kienbaum, Plaintiff waited until he had *already filed two motions to*

*dismiss* before he sought leave to file his Second Amended Complaint.

This Court concludes that Plaintiff's undue delay warrants denying his motion seeking

leave to file his proposed Second Amended Complaint.

### B.    Futility

In addition, the Court also concludes that the two new counts that Blackwell seeks to

assert against Jones Day and Gabel are futile.

Plaintiff's proposed Second Amended Complaint seeks to add the following two

additional counts against Jones Day and Gabel: 1) "Equal Protection 'Class-of-One' Claim –

Defendants Jones Day and Gabel Denied Plaintiff Equal Protection Under The Law Under The

Class-of-One Theory By Falsely Concluding Plaintiff Violated the MSU's RVSM Policy and

Failing To Include In Their Report That Defendant Dantonio Violated MSU's RVSM Policy."

(Count V); and 2) "MSU's RVSM Policy As-Applied To The Plaintiff By the Defendants Jones

Day and Gabel In Their June 2017 Written Report Violated Plaintiff's Fifth Amendment Right

To Remain Silent." (Count VI).  Both of those claims would be asserted under §1983.

For ease of analysis, the Court will evaluate those two proposed counts in the section of

this Opinion and Order that considers the Motion to Dismiss filed by Jones Day and Gabel.  As

explained in that section, both of those claims are futile.  This is an additional basis to deny

Blackwell's Motion to Amend.

## III.   Jones Day And Gabel's Motion To Dismiss

As to Defendants Jones Day and Gabel, the operative First Amended Complaint asserts

the following two counts against them:1) "Plaintiff's As-Applied Challenge to MSU's RVSM

Policy Cited in Defendants Jones Day and Gabel's June 2017 Written Report Violated Plaintiff's

First Amendment Rights." (Count I); and 2) "First Amendment Retaliation Claim Against

Defendants Jones Day and Gabel."  (Count II).  Plaintiff's Motion to Amend seeks leave to

assert two additional counts against them – Counts V and VI of Blackwell's proposed Second

Amended Complaint.

All of the current and proposed claims asserted against Jones Day and Gabel are brought

under § 1983.  To state a claim under § 1983, a plaintiff must set forth facts that, when construed

favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the

United States; 2) caused by a person acting under the color of state law.  *Dominguez v.*

*Correctional Medical Services,* 555 F.3d 543, 549 (6th Cir. 2009).

Defendants contend that: 1) the existing claims asserted against them in the First

Amended Complaint should be dismissed, for failure to state claim; and 2) the two new proposed

counts are futile for the same reasons.

Defendants make a number of arguments and some of them are conflicting.  For example,

Defendants contend that § 1983 claims cannot be asserted against them because they are not

"state actors."  But they also assert that, if they are considered state actors, then they are entitled

19

to qualified immunity.  *See, e.g. Cullinson v. Abramson*, 128 F.3d 301, 310 (6th Cir. 1997)

(outside counsel can be entitled to qualified immunity.).  Plaintiff does not dispute that

proposition.  Thus, the Court will consider whether Jones Day and Gabel are entitled to qualified

immunity.

Under the doctrine of qualified immunity, government officials performing discretionary

functions generally are shielded from liability from civil damages insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person

would have known.  *Id.; Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008).

Determining whether government officials are entitled to qualified immunity generally requires

two inquiries:  1) whether, viewing the facts in the light most favorable to the plaintiff, the

plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly

established at the time of the violation.  *Dominguez*, 555 F.3d at 549.

"[A] qualified immunity defense can be raised at various stages of the litigation including

at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment,

or as an affirmative defense at trial."  *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  Here,

Defendants have raised the issue in the context of their motion to dismiss the claims in the

existing complaint, and in connection with Plaintiff's motion to amend to add additional claims.

"Once the qualified immunity defense is raised, the burden is on the plaintiff to

demonstrate that the officials are not entitled to qualified immunity."  *Silberstein v. City of

Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).  Thus, it is *Blackwell's burden* to show that Jones

Day and Gabel are not entitled to qualified immunity.

The first step in the qualified immunity analysis is to consider whether, viewing the facts

in the light most favorable to Plaintiff, could Plaintiff establish a Constitutional violation with respect to Jones Day and Gabel, as to any of the claims asserted against them. Then, if necessary, the Court considers if that right was "clearly established."

A.    **Plaintiff's As-Applied Challenges To MSU's RVSM Policy (Count I & Proposed Count VI)**

Count I is titled, "As-Applied Challenge to MSU's RVSM Policy Cited in Defendants Jones Day and Gabel's June 2017 Written Report Violated Plaintiff's First Amendment Rights." Notably, this claim "is brought against Defendants Jones Day and Gabel." (proposed SAC at 135). Count VI of Blackwell's proposed Second Amended Complaint is titled "MSU's RVSM Policy As-Applied To The Plaintiff By the Defendants Jones Day and Gabel In Their June 2017 Written Report Violated Plaintiff's Fifth Amendment Right To Remain Silent." (*Id*. at 69). Like Count I, this claim "is brought against Defendants Jones Day and Gabel." (*Id.* at ¶ 290).

Blackwell's complaints reference the challenged policy as MSU's "RVSM Policy" which appears to be MSU's "Policy on Relationship Violence & Sexual Misconduct." (*See* proposed SAC at ¶ 144). Because there were no exhibits attached to any of Plaintiff's complaints, a copy of MSU's RVSM Policy (assuming it is a written policy) is not before the Court.

And both the operative complaint and Blackwood's proposed Second Amended Complaint contain few factual allegations as to the challenged policy that forms the basis of these two counts. Blackwood alleges that "as an employee of MSU," he "was a mandatory reporter under the RVSM Policy." (*Id*. at ¶ 155). He alleges that "MSU's RVSM policy makes it mandatory for an employee with knowledge of an alleged sexual [assault] to report information known to them to the MSU Police Department and the OIE." (*Id.* at ¶ 310). That is, "MSU's RVSM policy mandates and requires an employee to report any alleged sexual assault

to the MSU Police Department and the OIE." (*Id*. at ¶ 309).  He alleges that "MSU's RVSM

policy does not allow university officials or employees to offer immunity to an employee who is

required to report an alleged sexual assault to the MSU Police Department and/or the OIE." (*Id*.

at ¶ 308).  Blackwell's complaints do not contain any factual allegations regarding any

consequences provided under the policy for an employee who fails to comply with those

requirements.

Blackwood alleges that the "MSU RVSM Policy, as applied to [him], violated [his] First

Amendment right not to speak." (*Id*. at ¶ 150).  He further alleges that "the MSU RVSM Policy,

as applied to [him], violated [his] Fifth Amendment right against self-incrimination." (*Id*. at ¶

305).  In terms of supporting factual allegations, Blackwood alleges that he did not report an

alleged sexual assault "to the OIE and MSU Police Department" because he was exercising his

First Amendment right not to speak.  Blackwood alleges that he was speaking as a citizen and

not as an employee when he chose not to report and/or speak with officials from the OIE and

MSU Police Department about the alleged sexual assault involving three MSU football players

on January 15, 2017." (*Id*. at ¶ 152 & 153).  Blackwell does not allege that suffered any adverse

consequences set forth under the RVSM Policy for failing to comply with it.

Blackwell further alleges that, later, the Jones Day Report falsely concluded that he

violated MSU's RVSM Policy by: 1) "allegedly conducting his own investigation in to the

alleged sexual assault; and 2) "by not reporting the alleged sexual assault to MSU's OIE and to

the MSU Police Department." (*Id.* at ¶¶ 144-48).  The actual Jones Day Report, however, does

not identify Blackwell by name or job title.

Jones Day and Gabel contend that the existing Count I claim should be dismissed, and

the proposed Count VI claim is futile, for numerous reasons, including that these claims fail to

state a viable claim against Jones Day or Gabel because they challenge MSU's policy and only

MSU could have caused those purported violations.

There are two types of constitutional challenges to a governmental statute or policy: 1)

facial challenges; and 2) as-applied challenges.  "A facial challenge is really just a claim that the

law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 139 S.Ct.

1112, 1128 (2019).  Even if a given "[p]olicy is constitutional on its face, it can still be

unconstitutional as implemented," called an "as-applied" challenge.  *Jones v. Hamilton Cnty.*

*Gov't, Tenn*, 530 F. App'x 478, 490 (6th Cir. 2013) ("Although the Policy is constitutional on its

face, it can still be unconstitutional as implemented by the Commission.").

Here, Blackwell does not assert that MSU's RVSM Policy is unconstitutional on its face.

Rather, he seeks to make as-applied challenges to MSU's RVSM policy.  The Court agrees that

these counts fail to state a viable claim against Jones Day or Gabel.

These claims challenge the constitutionality of *MSU's policy* but Plaintiff has not

asserted either of these claims against MSU.  As Defendants note, one fatal flaw to these claims

is that, even assuming MSU's policy violated Blackwell's constitutional rights, Jones Day and

Gabel did not cause any violation of Blackwell's rights.  Defendants note that "[i]t was MSU's

policy, not Jones Day's, and thus only MSU could have caused the violation.  Jones Day has no

control over the policy.  It is thus unclear how this Court could even grant Blackwell's requested

relief – declaring an MSU policy unconstitutional, *see* Compl. p. 28 – when no one from MSU is

even part of this claim."  (ECF No. 11 at 16).  That question aside, Defendants contend that these

claims fail for failure to allege that Jones Day or Gabel (as opposed to MSU) caused these

23

purported violations.

These counts fail to state a viable constitutional claim against Jones Day or Gabel. These counts challenge MSU's policy but they are not asserted against MSU. Simply stated, Blackwell fails to state a claim against Jones Day or Gabel because the challenged policy is not their policy, they are not alleged to have played any role in enacting the policy, nor are they alleged to have enforced the policy against Blackwell.

Count I of the existing complaint shall be dismissed. Jones Day and Gabel are entitled to qualified immunity because Plaintiff fails to state a viable constitutional claim against Jones Day and Gabel and Blackwell's proposed Count VI is futile for that same reason. Given that ruling, the Court need not address any of the additional or alternative challenges to these counts.

### B.    First Amendment Retaliation Claim (Count II)

In Count II, Blackwell asserts a First Amendment retaliation claim against Jones Day and Gabel. Defendants challenge this claim on a number of grounds, including that Blackwell has not plausibly alleged that Jones Day or Gabel caused this alleged constitutional violation.

In order to "adequately plead a First Amendment retaliation claim," a plaintiff must allege: 1) the plaintiff engaged in constitutionally protected conduct; 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Wurzelbacher v. Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).

Here, it appears undisputed that Jones Day and Gabel were hired by MSU to perform an independent "investigation of the MSU football program's institutional response to allegations of sexual assault" in connection with incidents that occurred in January and April of 2017 involving

current or former MSU football players.  (*Id*. at ¶ 7).  Blackwell alleges that, as a result of his

exercising his right not to speak with Jones Day and Gabel in connection with their private

investigation, Jones Day and Gabel retaliated against him by "publishing in their June 2017

written report information that was damaging to Plaintiff's reputation and good name." (*Id*. at ¶

174).  He alleges that the "adverse action Defendants Jones Day and Gable took by publishing

certain information in their June 2017 written report was deliberate and intentional to besmirch

Plaintiff's good name and reputation."  (*Id*. at ¶ 181).  Plaintiff seeks money damages as well as

a "declaration that Defendants Jones Day and Gabel retaliated against Plaintiff for exercising his

First Amendment right not to speak by publicizing information that was damaging to Plaintiff's

good name and reputation."  (*Id.* at 39).

       Assuming that Plaintiff engaged in constitutionally protected conduct by declining to

speak with Jones Day and Gabel, Plaintiff must still adequately allege that the defendant's

adverse action caused him to suffer an injury that would likely chill a person of ordinary

firmness from continuing to engage in that activity.  *Paige v. Coyner*, 614 F.3d 273, 281 (6th Cir.

2010).

       To survive a motion to dismiss, as to this "second part of this element – causation,"

Blackwell's allegations must plausibly establish that Jones Day/Gabel are legally responsible for

the publication or public disclosure of information in the Jones Day Report that was damaging to

Blackwell's good name and reputation.  *Paige, supra.*  That requires Blackwell to establish both

cause in fact and proximate cause.  *Id.*

       Notably, the actual Jones Day Report referenced in Blackwell's complaints and central to

his claims, can be considered in evaluating whether he states a viable constitutional claim against

Defendants.

As Defendants note, the Jones Day Report *"does not mention Blackwell's name.*  Ex. 1. Nor does Blackwell allege that Jones Day or Gabel publicly identified him as the person in the report.  And so the report itself could not have been 'damaging to [Blackwell's] reputation and good name.'  Compl. ¶ 174.  This defeats causation, for it shows that someone other than Jones Day or Gabel must have caused the alleged harm.  It also defeats the 'adverse action' element of retaliation, for neither Jones Day nor Gabel 'publicly disclosed' Blackwell's name or took adverse against him. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012)." (Defs.' Br. at 17).  Defendants further note that "neither Jones Day nor Gabel released Jones Day's findings or the report to the public; MSU did.  Blackwell admits as much.  Compl. ¶ 140. Here again, then, according to Blackwell's own pleading, MSU necessarily caused any possible adverse action against Blackwell; Jones Day and Gabel did not."  (Defs.' Br. at 17).

In responding to the motion to dismiss, Blackwell argues that "[h]arassing and publicizing information damaging to the Plaintiff's reputation" can be considered an adverse action for purposes of this claim.  (Pl.'s Br. at 12).  Plaintiff does not address, however, the fact that the Jones Day Report did not include his name anywhere in the report.

The Court agrees that Blackwell has not adequately alleged a First Amendment retaliation claim against Jones Day and Gabel.  The Jones Day Report, that was provided to MSU, did not include Blackwell's name anywhere in the report.  It also did not identify Blackwell by job title (Director of College Advancement and Performance/Camp Director) or other unique identifying information.  It merely referenced an unidentified member of the coaching staff.  As such, Blackwell has not plausibly alleged that the Jones Day Report included

information that was damaging to Blackwell's good name and reputation.  Moreover, Plaintiff

alleges that MSU – not Jones Day or Gabel – "publicly released" the Jones Day report (that did

not include Blackwell's name in the report in any event).  Plaintiff further alleges that on June 6,

2017, Dantonio (not Jones Day or Gabel) "appeared at a press conference at MSU's football

Spartan Stadium" during which Dantonio referenced the Jones Day Report.  (proposed SAC at

¶¶ 131 & 133).

Blackwell has not alleged a viable First Amendment retaliation claim against Jones Day

or Gabel and, therefore, they are entitled to qualified immunity.

### C.    Class-Of-One Equal Protection Claim (Proposed Count V)

Blackwell seeks to add a "class-of-one" equal protection claim against Defendants Jones

Day and Gabel.

"The Equal Protection Clause prohibits discrimination by government which either

burdens a fundamental right, targets a suspect class, or intentionally treats one differently than

others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Board*

*of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005).

Here, Blackwell relies on that third argument and asserts an equal protection claim

against the Commission, based on a "class-of-one" theory.  *See Village of Willowbrook v. Olech*,

528 U.S. 562, 564 (2000) (per curiam).  Paterson is no stranger to these claims, as he has

unsuccessfully asserted such claims on behalf of his clients before.  *See Davis v. Detroit Public*

*Sch. Commty. Dist.*, __ F. App'x __, 2020 WL 6540411 at *3 (6th Cir. Nov. 6, 2020) (finding

"Davis has not stated a cognizable Equal Protection claim" under class-of-one theory, "because

he has identified no similarly situated individuals.").

27

To assert a cognizable class-of-one equal protection claim, a plaintiff "must plead and prove that they were 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Rapp v. Dutcher*, 557 F. App'x 444, 449 (6th Cir. 2014) (quoting *Willowbrook, supra*). Plaintiff has not sufficiently alleged either one, in either his original Complaint or his proposed Amended Complaint that includes the same claim.

In *Rapp*, the plaintiffs brought a § 1983 action against a city, city officials, and a condominium association, alleging claims relating to citations they were issued for renting their condominium without a license. Among other claims, they asserted a class-of-one equal protection claim, alleging that they were "singled out" because of prior lawsuits with the city. The Sixth Circuit affirmed the dismissal of that claim, concluding that claim failed a *Twombly-Iqbal* plausibility analysis. The complaint in that case contained "no facts showing that the City treated plaintiffs differently from other individuals who violated the rental license ordinances." *Id*. at 450.

Here, in support of his class-of-one equal protection claim against Jones Day and Gabel, Plaintiff alleges that "MSU engaged Defendants Jones Day and Gabel to conduct an external investigation of the football program" and alleged assault involving football players. (proposed SAC at ¶ 267) Plaintiff alleges that Jones Day and Gabel "disliked Plaintiff" because he declined to be interviewed during their investigation. (*Id.* at ¶ 285). He alleges that, "[b]ased on their personal dislike an animus" towards Plaintiff, Jones Day and Gabel "treated Plaintiff differently than Defendant Dantonio." (*Id.* at ¶ 286). Plaintiff alleges that the Jones Day Report falsely concluded that Plaintiff violated MSU's RVSM Policy by failing to report an alleged sexual

assault and by conducting his own investigation into an alleged assault.  Plaintiff alleges that,

"[n]otably absent" from the Jones Day Report "was any summary detailing the fact that the

alleged sexual assault were reported to the MSU Police Department and to MSU's OIE by proxy

on Defendant Dantonio's behalf." (*Id.* at ¶ 281).  Plaintiff does not include any factual

allegations as to how Defendant Dantonio is alleged to have reported the alleged sexual assaults

"by proxy."  Plaintiff has not provided the Court with a copy of MSU's RVSM Policy and his

complaints do not contain factual allegations specifying the manner in which employees are

required to report alleged sexual assaults.

In asserting that this new proposed claim against them is futile, Defendants Jones Day

and Gabel assert that Plaintiff has failed to sufficiently allege that he was treated differently than

someone who was similarly situated in all material respects:

> Blackwell admitted that he "did not speak to [ ] or report the alleged sexual
> assault to the OIE [or] to the MSU Police Department in accordance with RVSM
> Policy as the Jones Day Defendants' report indicates."  (ECF NO. 19, PageID.668
> (Blackwell's Opp.).)  It is thus "undisputed" – as Blackwell himself says (id.),
> and as the Jones Day report suggested – that Blackwell learned of the sexual-
> assault allegations and did not report them, thus violating MSU's reporting
> policy.  It is also undisputed that Dantonio did report what he had heard, whether
> he did so himself to the University's Office of Institutional Equity (ECF No. 11-2,
> PageID.495 (Jones Day Report)), or, as Blackwell alleges, to the MSU Police
> Department through a "proxy on Defendant Dantonio's behalf."  (ECF No. 31-1,
> PageID.1057 (Proposed Second Am. Compl. ¶ 281)).  Either way, Blackwell and
> Dantonio are not similarly situated in the most material respect:  one reported and
> the other did not." Blackwell and Dantonio are differently situated, too, when it
> comes to whether they performed their own independent inquiries: Blackwell did,
> but Dantonio did not.  (ECF Nol. 11-2, PageID.495, 502).  This sinks Blackwell's
> "class of one" claim.

(Defs.' Br. at 7).

The Court agrees that Blackwell's proposed Second Amended Complaint lacks sufficient

factual allegations to show that Jones Day and Gabel treated Plaintiff differently than a person

who was similarly situated in all material respects.  *Rapp, supra*; *Davis, supra*, at *3; *Smith v. Michigan Dep't of Health & Hum. Svs*., 2018 WL 5137779 at *3 (E.D. Mich. 2018) (dismissing class-of-one claim where the complaint contained no plausible allegations of disparate treatment).

### III.    Defendant Dantonio And Beekman's Motion

Plaintiff filed this action on June 6, 2020 and filed an Amended Complaint on July 20, 2020.

On September 16, 2020, Defendants Dantonio and Beekman filed a  "Motion To Dismiss, For Judgment As A Matter Of Law, And For Sanctions" (ECF No. 25), brought under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56.  In this motion, Defendants challenge the two counts asserted against them on a number of grounds.  (*See* Def.'s Br. at 3) (Arguing the two claims against Dantonio and Beekman "should be dismissed pursuant to Rule 12(b)(6) or Rule 56 for at least six independent reasons.").  Defendants ask the Court to grant summary judgment in their favor under Fed. R. Civ. P. 56 and note that Rule 56 allows parties to move for summary judgment prior to discovery.  (*See* Defs.' Br. at 13).

The motion filed by Defendants Dantonio and Beekman was one of a series of motions that were filed, briefed by the parties, and taken under advisement by this Court.

Before this Court issued a ruling on Dantonio and Beekman's motion, on February 17, 2021, Plaintiff filed a Notice of Voluntary Dismissal stating that Plaintiff wishes to  voluntarily dismiss all claims against Dantonio and Beekman in this action (Counts III and IV), without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(I).  (*See* ECF Nos. 44 & 45).

Federal Rule of Civil Procedure 41(a)(1)(A) provides that a plaintiff may voluntarily

dismiss an action "without a court order" by filing either: 1) a "notice of dismissal before the opposing party serves either an answer or a motion for summary judgment" or 2) "a stipulation of dismissal signed by all parties who have appeared."  Fed. R. Civ. P. 41(a)(1)(A).  The notices Plaintiff filed on February 17, 2021 assert that "[a]s of the date and time of the filing of this notice, Defendants Bill Beekman and Mark Dantonio have not filed an answer or a motion for summary judgment."  (*See* ECF No. 44 at 2).  Plaintiff's notices direct the Court to the Sixth Circuit's decision in *Aamot v. Kassel*, 1 F.3d 441 (6th Cir. 1993) and assert that this Court has no basis upon which it can prevent voluntary dismissals without prejudice.

Those notices prompted Defendants Dantonio and Beekman to file a motion to strike the notices because, contrary to Plaintiff's Counsel's assertion, Defendants filed a motion seeking summary judgment.  (ECF No. 46).  Defendants Dantonio and Beekman oppose a dismissal without prejudice of the claims asserted against them.  The Court shall grant this motion and strike the improper notices.

Plaintiff cannot voluntarily dismiss the claims against Dantonio and Beekman without prejudice under Rule 41(a)(1)(A).  Dantonio and Beekman's motion was expressly brought under both Fed. Civ. P. 12(b)(6) *and Fed. R. Civ. P. 56*.  Thus, it is a motion for summary judgment.  As such, Plaintiff cannot voluntarily dismiss his claims against Dantonio and Beekman without prejudice absent either a "stipulation of dismissal signed by all parties who have appeared," which he does not have, or a court order.

On February 23, 2021, – nearly six months after Defendants Dantonio and Beekman filed their dispositive motion and just a few days after the Court advised that it was in the process of finalizing its Opinion and Order dealing with all of the pending motions" in this case (*see* ECF

31

No. 47) – Plaintiff filed a motion asking the Court to allow him to dismiss his claims against Defendant Dantonio and Beekman without prejudice.  (ECF No. 50).  Plaintiff's motion notes that Defendants Dantonio and Beekman oppose the motion.  (*Id.* at PageID.1264).

Under Fed. R. Civ. P. 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  "Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court."  *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994).  The "purpose of Rule 41(a)(2) is to protect the nonmovant, here [Defendants Dantonio and Beekman] from unfair treatment." *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009).

In determining whether the nonmovant would suffer prejudice as a result of a requested dismissal without prejudice, "courts typically consider 'the defendant's efforts and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant.'" *Id*. (quoting *Grover by Grover*, 33 F.3d at 718)).

Under the circumstances presented here, these factors weigh against Plaintiff's motion. This is now Plaintiff's third lawsuit against Defendant Dantonio.  And in this third lawsuit, Plaintiff has drafted three different complaints that Defendants Dantonio and Beekman have had to review and oppose.  Defendants incurred significant time and expense in drafting both a response in opposition to Plaintiff's motion seeking leave to file his proposed Second Amended Complaint and a comprehensive motion to dismiss and for summary judgment.  They then incurred additional costs when they had to file a motion to strike Plaintiff's improper Notices of

Voluntary Dismissal.  Now, some six months after Defendants filed their dispositive motion,

Plaintiff wishes to voluntarily dismiss his claim against Defendants Dantonio and Beekman

without prejudice and the reason why is clear – Plaintiff's counsel realized he failed to file any

response to their motion and the time for doing so has long since passed.  The Court concludes

that these are precisely the kind of circumstances under which a request for dismissal without

prejudice under Rule 41(a)(2) *should not* be granted.

Accordingly, the Court will strike the notices, deny Plaintiff's motion seeking to dismiss

his claims against Defendants Dantonio and Beekman without prejudice, and will proceed to

evaluate Dantonio and Beekman's pending motion.

Plaintiff's operative First Amended Complaint asserts the following two counts against

Dantonio and Beekman:  1) "First Amendment Retaliation Claim Against Defendants Kienbaum,

Dantonio, and Beekman for False and Damaging Statements Made To Mlive" (Count III); and 2)

"First Amendment Retaliation Claim Against Defendants Beekman, Dantonio and Kienbaum for

Publicly Accusing Plaintiff of Lying about MSU Athletic Department's and Defendant

Dantonio's Apparent NCAA Violations" (Count IV).[2]

In Dantonio and Beekman's comprehensive motion, they assert that the First Amendment

retaliation claims against them should be dismissed for a variety of reasons.  Among other

things, they argue that Plaintiff has not sufficiently alleged a First Amendment retaliation claim

against them because: 1) Blackwell's improper filings and conduct in the Western District Court

is not "protected activity; 2) Blackwell has not plausibly alleged any other protected conduct

---

[2]The proposed Second Amended Complaint would not add any counts against Dantonio
or Beekman.

motivated by the purportedly retaliatory statements; and 3) Blackwell was not subject to an adverse action.

Defendants Dantonio and Beekman further assert that these § 1983 counts cannot be asserted against Dantonio because he was not a "state actor" when he was defending himself in the Western District Litigation.

Defendants also assert that the Court should find, under Fed. R. Civ. P. 56, that Blackwell's factual allegations regarding a conspiracy between Beekman, Dantonio, and Kienbaum are without evidentiary support.  (*See* Defs.' Br. at 13-14.)  They explain:

> In Kienbaum's first motion to dismiss, he pointed out that neither he nor Dantonio are state actors for purposes of Blackwell's First Amendment claim. (Docket Entry No. 3, PageID 67.) In response, Blackwell and Paterson made up a story that Beekman was somehow involved in Kienbaum's January 30 statement, that Dantonio and Kienbaum were somehow involved in Beekman's February 4 statement, and that both statements are part of a conspiracy against Blackwell. (See, e.g., Amend. Compl. at ¶ 200, 242-44.) Blackwell and Paterson's capacity to make these allegations without any even arguably good-faith basis for doing so is hair-raising, but, unfortunately, not at all surprising at this point. In any event, the attached sworn affidavit of William Beekman establishes that he has never spoken or communicated in any way with Kienbaum. (Exhibit G, at ¶¶ 3, 4.) He had no involvement or advance notice of Kienbaum's January 30 statement and, aside from being subpoenaed as a witness, has had no involvement in the Western District Litigation at all. (*Id*. at ¶¶ 5, 6.) The statement he made at the February 4 press conference was a truthful response to a press inquiry. (*Id*. at ¶¶ 7-10.) He was not encouraged to make that statement by either Dantonio or Kienbaum. (*Id*.) Blackwell cannot establish a conspiracy between Beekman, Dantonio, and Kienbaum because there was none, and he has no good faith basis to suggest otherwise. *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir. 2003) (dismissing conspiracy claim where there is no evidence that parties were not acting independently).

(*Id*.).

Defendants further argue that even if Blackwell pled a viable claim, and Dantonio could be considered a state actor, both Dantonio and Beekman would be entitled to qualified immunity

in any event.  (Defs.' Br. at 14).  As noted above, once a "qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity."  *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).  Thus, because Dantonio and Beekman raised this assertion of qualified immunity in their motion, it is *Blackwell's burden* to show that Dantonio and Beekman are not entitled to qualified immunity.  *Green v. City of Southfield*, 759 F. App'x 410, 416 (6th Cir. 2018) ("Qualified immunity is an affirmative defense; once a defendant raises the defense, 'the burden shifts to the plaintiff to demonstrate both that' (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendant's misconduct.").  Finally, Defendants Dantonio and Beekman ask the Court to impose sanctions against Paterson and Blackwell under 28 U.S.C. § 1927.  (Defs.' Br. at 15-16).

Although the motion filed by Dantonio and Beekman on September 16, 2020 seeks dismissal of both claims based upon qualified immunity,  Blackwell did not file a brief in opposition to the motion and the time for doing so has long since passed.

Thus, Blackwell failed to meet his burden of establishing that Dantonio and Beekman are not entitled to qualified immunity and the Court shall dismiss both claims asserted against them with prejudice.  The Court declines to impose sanctions under § 1927.[3]

## IV.    Kienbaum's Motion To Dismiss And/Or Summary Judgment

Again, Defendant Kienbaum is a lawyer that was retained as outside counsel to represent Dantonio in the Western District Case.

---

[3]The Court is considering imposing sanctions against Mr. Paterson under Fed. R. Civ. P. 11 (*see* 2/19/21 Show Cause Order), and that issue will be addressed seperately.

As to Defendant Kienbaum, the operative First Amended Complaint asserts the following two counts against him: 1) "First Amendment Retaliation Claim Against Defendants Kienbaum, Dantonio, and Beekman for False and Damaging Statements Made To Mlive" (Count III); and 2) "First Amendment Retaliation Claim Against Defendants Beekman, Dantonio and Kienbaum for Publicly Accusing Plaintiff of Lying about MSU Athletic Department's and Defendant Dantonio's Apparent NCAA Violations" (Count IV). [4]

Count III is based upon statements that Kienbaum made to the press, while Count IV is based upon statements that Beekman made to the press.

Both First Amendment retaliation claims asserted against Kienbaum are brought under § 1983. To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law. *Dominguez,* 555 F.3d at 549.

In order to "adequately plead a First Amendment retaliation claim," a plaintiff must allege: 1) the plaintiff engaged in constitutionally protected conduct; 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Wurzelbacher v. Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).

Defendant Kienbaum's motion asserts that the claims asserted against him must be dismissed because: 1) Plaintiff has failed to allege a viable basis to hold him, as a private actor,

---

[4]The proposed Second Amended Complaint would not add any new claims against Kienbaum.

liable under § 1983; and 2) Plaintiff has failed to allege an actionable "adverse action" for purposes of the two First Amendment Retaliation claims asserted against him.

Kienbaum asserts that Blackwell "wrongly asserts a Section 1983 claim – available only against individuals who act 'under color of law' – against a private actor whose only role was as attorney for another individual acting in his private capacity." (Def.'s Br. at 4). Kienbaum asserts that "[i]t is well settled that an attorney does not become a state actor by representing a client – even if that client is a putative public official – in legal proceedings." (Def.'s Br. at 6). In support of that assertion, Defendant directs the court to *Newsome v. Merz*, 17 F. App'x 343, 345 (6th Cir. 2001) ("As a lawyer representing a client, [the defendant] was not a state actor within the meaning of § 1983."); *Otworth v. Vanderploeg*, 61 F. App'x 163, 166 (6th Cir. 2003) (As private attorneys representing private citizens, [the defendants] were not acting under color of state law."); *Raines v. Indianapolis Pub. Sch.*, 52 F. App'x 828, 830 (7th Cir. 2002) ("[A]s a private attorney, [the defendant] was not acting 'under color of state law' for the purposes of a section 1983 suit when he represented the Board.").

Keinbaum also contends that Plaintiff's First Amendment retaliation claims against him fail because the form of Kienbaum's alleged retaliation – Kienbaum's own speech – is protected by the First Amendment and is not an "adverse action" as a matter of law. His motion asserts:

> First, Blackwell alleges that Kienbaum retaliated against him by responding to questions from a reporter – in other words, by engaging in speech. But speech cannot be an "adverse action" unless it is defamatory or otherwise unprotected by the First Amendment. As the Sixth Circuit held in *Mezibov v. Allen*, in "analyzing the extent of the 'adverse action' . . . , we must be careful to take into account only those comments made by [the defendant] that could reasonably be construed as defamatory, lest we trample on the First Amendment rights that [the defendant] retains as a government official." 411 F.3d 712, 722 (6th Cir. 2005) (Ex. G). This limitation is important because Blackwell is not the only one with First Amendment rights here: in cases alleging retaliatory speech, "the right is

37

identical on both sides." *Bartley v. Taylor*, 25 F. Supp.3d 521, 538 (M.D. Pa. 2014). And here, Kienbaum's statements are entitled to full constitutional protection under the First Amendment.

(Def.'s Br. at 12-13).

Kienbaum's motion asserts that the First Amendment retaliation claims should be dismissed for other reasons, including that the publication was privileged because Plaintiff's own conduct in the Western District case invited the comments at issue.

But Plaintiff's response brief *largely ignores* Kienbaum's various arguments.  As such, by failing to respond to Kienbaum's various arguments, Plaintiff has waived those issues. *Humphrey v. United States Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008).

As to Keinbaum's argument that Plaintiff has not alleged that Kienbaum took an actionable adverse action against Plaintiff when he spoke to a journalist,  Plaintiff does makes a cursory argument that Kienbaum caused "false and defamatory statements to be made to the media."  (Pl.'s Br. at 13) (*see also* Pl.'s Br. at 17, arguing that "Defendant Kienbaum's False And Defamatory Speech Is Not Protected By The First Amendment.").

As Kienbaum's reply brief notes, that argument is misplaced because Plaintiff has not alleged that Kienbaum's speech was defamatory:

> Blackwell insists that Kienbaum's speech is not protected by the First Amendment because it is false and defamatory.  But that second descriptor – "defamatory" – is a new addition to this case.  The Amended Complaint does not allege that Kienbaum's speech was defamatory.  *Cf., Mitan v. Campbell*, 474 Mich. 21, 24 (2005) (defining defamatory statement not only as false, but unprivileged, actionable and made negligently to a third party.).  It alleges only that Kienbaum's statement was "false."  That's important because merely calling speech "false" does not make it defamatory, nor does it deprive it of legal protection under the First Amendment.  *See, e.g., Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016).
> . . . .
> The importance of this point cannot be overstated.  Under well-settled

38

Sixth Circuit precedent, protected speech cannot constitute an adverse action. *See Mezibov*, 411 F.3d at 722 ("[I]n analyzing the extent of the "adverse action" . . . we must be careful not to take into account only those comments . . . that could reasonably be construed as defamatory, lest we trample on the First Amendment rights . . ."). In fact, the very case that Blackwell cites in support of his "adverse action" argument explicitly says so: "To the extent that [the defendant's statements] were an exercise of right of reply under the First Amendment, he could not be liable for retaliation based on that speech." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 729 n.5 (6th Cir. 2010) (citing in Pl.'s Resp., R. 18, Pg ID 639); *see also Samad v. Jenkins*, 845 F.2d 660, 663 (6th Cir. 1988).

(Def.'s Reply Br. at 2).

This Court agrees that Kienbaum's speech at issue in this case was protected by his First Amendment rights and, therefore, cannot form the basis of a retaliation claim. Thus, Count III shall be dismissed.

Count IV, Plaintiff's First Amendment Retaliation claim asserted against Kienbaum based upon statements that Beekman made to the press does not fare any better, for these same reasons, and others. This claim is based upon statements that Beekman – not Kienbaum – made to the press on February 2, 2020. Plaintiff seeks to hold Kienbaum liable for this claim by repeatedly alleging that Beekman made the statements at issue "at the request of" Kienbaum. (Pl.'s Sec. Am. Compl. at ¶¶ 236, 241, 242, 243).

Kienbaum's motion asserts that this claim should be dismissed, under Fed. R. Civ. P. 56, because there is no  no genuine factual dispute regarding a key element of this claim. He states that:

> "[c]ontrary to Blackwell's baseless allegations, Kienbaum and Beekman have never spoken, let alone conspired to publish statements about Blackwell. Kienbaum has submitted a declaration under the penalty perjury declaring unequivocally that he and Beekman have never spoken to each other since Beekman became employed by MSU. (Kienbaum Dec., 5 (Ex. K).) Kienbaum flatly states: "I definitely have not spoken to or communicated with Mr. Beekman in any manner, including indirectly through third parties, since he began his

39

employment with MSU over 20 years ago." (*Id.*).  Blackwell and Patterson have no evidentiary basis to say otherwise.

(Def.'s Br. at 21-22).[5]

    In responding to Defendant's motion, Plaintiff's response brief stated that he would file a Rule 56(d) affidavit to show that discovery is necessary.  (Pl.'s Br., ECF No. 18, at 6).  The Affidavit that Paterson then filed (ECF No. 20) states that in order to show there are disputed issues of fact, he would like to depose Kienbaum and ask him "direct questions" about any discussions and conversations with Beekman.

    That affidavit is insufficient.  Without offering some reason to question the veracity of the declaration of Kienbaum, or Beekman's affidavit, Paterson's desire to test and elaborate on their testimony falls short of what is necessary to avoid summary judgment under Fed. R. Civ. P. 56. *Dunning v. Quander,* 508 F.3d 8, 10 (D.C. Cir. 2007).

    Accordingly, the Court shall grant summary judgment in favor of Keinbaum as to Count IV.  The Court declines to impose sanctions.

## CONCLUSION & ORDER

    For the reasons set forth above, IT IS ORDERED that the motions filed as ECF Numbers 3 and 21 are DENIED AS MOOT.

    IT IS FURTHER ORDERED that Plaintiff's motion seeking leave to file a Second Amended Complaint (ECF No. 31) is DENIED on both undue delay and futility grounds.

    IT IS FURTHER ORDERED that Defendant Dantonio and Beekman's "Motion To Strike Plaintiff's Notices of Voluntary Dismissal" (ECF No. 46) is GRANTED and Plaintiff's

---

[5]Beekman filed a similar affidavit.  (ECF No. 25-8).

Notices of Voluntary Dismissal (ECF Nos. 44 & 45) are STRICKEN.

IT IS FURTHER ORDERED that Plaintiff's Motion seeking to voluntarily dismiss his claims against Defendants Dantonio and Beekman without prejudice (ECF No. 50) is DENIED.

IT IS FURTHER ORDERED that Defendant Dantonio and Beekman's unopposed motion (ECF No. 25) is GRANTED, to the extent that the Court rules that Dantonio and Beekman are entitled to qualified immunity, and the Court DISMISSES WITH PREJUDICE both claims asserted against them.

IT IS FURTHER ORDERED that the motion filed by Jones Day and Gabel (ECF No. 11) is GRANTED, to the extent that the Court DISMISSES WITH PREJUDICE all claims against them, because they are entitled to qualified immunity.

IT IS FURTHER ORDERED that Defendant Kienbaum's motion (ECF No. 10) is GRANTED, to the extent that all claims asserted against him are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's motion asking the Court to take judicial notice of a recently issued Sixth Circuit opinion (ECF No. 43) is DENIED as unnecessary, as the Court is aware of that case.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 26, 2021

41